PEOPLE v GREENBERG

Docket No. 107752. Submitted January 10, 1989, at Lansing. Decided April 3, 1989. Leave to appeal applied for.

Barton Greenberg pled nolo contendere in the Oakland Circuit Court to one count of larceny by false pretenses in exchange for dismissal of eighteen counts charging him with violating the Michigan Uniform Securities Act and one additional count of larceny by false pretenses. All of the charges resulted from a mortgage scheme conducted by defendant. The trial court, Norman L. Lippitt, J., sentenced defendant to six years eight months to ten years in prison. As part of the sentence, defendant was ordered to pay restitution to the victims of his crimes to the extent possible. The court prohibited defendant's parole or release to a halfway house until the restitution was accomplished and ordered the Attorney General to monitor defendant's status and enjoin the Department of Corrections from releasing defendant until that time. Defendant's plea was conditioned upon reserving his right to appeal the denial of his pretrial motions. Defendant appealed his conviction and sentence raising numerous issues.

The Court of Appeals *held:*

1. Defendant's claims that certain sections of the Uniform Securities Act are unconstitutional were determined to be moot.

2. The trial court did not err in denying defendant's motion to sever his trial from that of his codefendant and by refusing to sever the two larceny counts from the counts charging securities act violations.

3. The evidence presented at the preliminary examination was sufficient to bind defendant over for the charge of larceny by false pretenses.

4. Defendant's sentence does not shock the conscience of the

REFERENCES

Am Jur 2d, Criminal Law §§ 175-178, 243 *et seq.*, 413, 1051-1058; Trial §§ 17-24.5.

Propriety of use of multiple juries at joint trial of multiple defendants in state criminal prosecution. 41 ALR4th 1189.

Statutes providing for governmental compensation for victims of crime. 20 ALR4th 63.

Court of Appeals. The trial court gave adequate reasons for departure from the sentencing guidelines.

5. The trial court properly ordered defendant to pay restitution to all of the victims of his mortgage fraud scheme. The order of restitution was as specific as the circumstances allowed.

6. The trial court exceeded its authority by prohibiting defendant's parole or release to a halfway house until restitution is made and by ordering the Attorney General to enjoin the Department of Corrections from releasing defendant until that time. The sentencing order is modified by striking those conditions. Resentencing is not required.

Affirmed as modified.

1. ACTIONS — MOOTNESS.

An issue becomes moot when an event occurs which makes it impossible for the court to fashion a remedy.

2. CRIMINAL LAW — TRIAL — JOINT TRIALS.

Codefendants do not have an absolute right to separate trials; a motion for separate trials must be supported by an affirmative showing of prejudice to the defendant's substantial rights; public policy favors joint trials; the decision to hold a joint trial is within a trial court's discretion and will not be reversed absent an abuse of discretion.

3. CRIMINAL LAW — TRIAL — JOINT TRIALS.

The use of a dual jury procedure has been approved as a means of avoiding the problems arising from jointly trying defendants with antagonistic defenses.

4. CONSTITUTIONAL LAW — DOUBLE JEOPARDY.

The Double Jeopardy Clauses of the Michigan and United States Constitutions require joinder at one trial of all charges against a defendant growing out of a single criminal act, occurrence, episode, or transaction.

5. CRIMINAL LAW — PRELIMINARY EXAMINATIONS.

The function of a preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it; positive proof of guilt is not required, but there must be evidence on each element of the crime charged or evidence from which those elements may be inferred; the object is not to prove guilt beyond a reasonable doubt; where the evidence conflicts or raises a reasonable doubt, such questions should be left to the jury at trial (MCL 766.13; MSA 28.931).

6. CRIMINAL LAW — SENTENCING — DEPARTURE FROM GUIDELINES.

   Departure from the sentencing guidelines is permitted provided that the sentencing judge gives specific explanations for departure where there are special characteristics of the offense or offender necessitating a departure.

7. CRIMINAL LAW — SENTENCING — RESTITUTION.

   A sentencing judge may order a defendant to pay restitution in addition to any other penalty authorized by law; a court may order restitution for losses to a victim of a defendant's course of conduct which gives rise to the conviction, which may exceed the losses caused by the actual crime of which defendant is eventually convicted, and may order restitution for other related crimes which have not resulted in convictions (MCL 769.1a, 780.766[2]; MSA 28.1073, 28.1287[766][2]).

8. PAROLE — RESTITUTION — SENTENCING.

   The Department of Corrections has exclusive jurisdiction over paroles, commutations, and penal institutions, subject to the powers of the Judicial and Executive Departments; a sentencing judge is not empowered to make the full payment of restitution a prerequisite to obtaining parole or early release, however, any restitution ordered shall be a condition of parole and the parole board may revoke parole if the defendant fails to comply (MCL 780.766[13], 791.204, 791.233; MSA 28.1287[766][13], 28.2274, 28.2303).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Robert Ianni* and *John D. Walter,* Assistant Attorneys General, for the people.

*Richard Paul Zipser,* and *Harold Z. Gurewitz,* for defendant.

Before: GRIBBS, P.J., and MICHAEL J. KELLY and MARILYN KELLY, JJ.

MICHAEL J. KELLY, J. Defendant, Barton Greenberg, pled nolo contendere to one count of larceny by false pretenses, MCL 750.218; MSA 28.415, in exchange for dismissal of eighteen counts charging him with violating the Michigan Uniform Securi-

ties Act, MCL 451.501 *et seq.*; MSA 19.776(101) *et seq.*, and one additional count of larceny by false pretenses. The court sentenced defendant to six years eight months to ten years in prison. The court also imposed several other conditions as part of defendant's sentence.

Defendant was originally charged with thirty-six counts of violating the Uniform Securities Act plus two counts of larceny by false pretenses. These charges arose out of defendant's participation in the infamous Diamond Mortgage/A. J. Obie and Associates fraud scheme, the largest reported "Ponzi" scheme in the history of this state. This scheme caused losses of over 47 million dollars to over 1,600 investors. Defendant was the chairman of the board and director of Diamond Mortgage Corporation and the president and director of A. J. Obie and Associates. Diamond was a mortgage broker company which advertised to attract borrowers who would sign promissory notes secured by mortgages on their homes. Those notes and mortgages were later sold to investors through A. J. Obie, a registered broker-dealer. A. J. Obie also sold shares in Commerce Mortgage Investments, Ltd., a real estate investment trust. Defendant had the primary decision making authority at both Diamond and Obie.

Potential borrowers would apply for a loan from Diamond and sign a promissory note and mortgage before receiving any money. The borrowers were informed that they would receive money in the future if their applications were approved. After being signed by the borrowers, the notes and mortgages were immediately placed on a list of "closed" mortgages. Funds were generally disbursed to borrowers from three to ninety days later. Diamond informed the potential borrowers that, if they did not receive any money, the mort-

gages on their property would be discharged and they would have no obligation to pay anything.

Persons who invested with A. J. Obie would pay their money to an Obie agent, and Diamond would then match a mortgage from their closed mortgage list with an identical amount on a list of investor funds. The investor's money would be transferred to Diamond's general account and the investor would be assigned a note and mortgage. In theory, the Obie investor should have been assigned a note and mortgage on which funds had already been disbursed. These funds would have been used to pay off all prior mortgages and liens, thereby ensuring that the investor received a note secured by a first mortgage, as represented in Diamond's offering circular. Instead, Diamond's matching process permitted the assignment of undisbursed notes and mortgages to investors. When funds were not disbursed to the borrowers, the investors were left holding notes which were not secured by first mortgages and on which the borrowers did not intend to make payments. Defendant was aware that these undisbursed mortgages were being assigned to investors.

In December of 1985, Diamond began an incentive program which rewarded its loan officers for increasing the number of "closed" loans. The increase in closed loans apparently had the purpose of generating more worthless notes and mortgages which could then be given to unsuspecting investors. Defendant approved this procedure.

Around February of 1986, Diamond's vice-president, Leslie Lupovich, informed defendant that many borrowers who had not received any money were calling to request discharges of their mortgages. However, these notes and mortgages had already been assigned to investors. Defendant in-

structed Lupovich to tell the investors that there was merely a processing error.

In December of 1985, defendant asked Lupovich for a list of active mortgages, which included fully disbursed mortgages upon which payments were being made and those which were less than thirty days delinquent. Defendant asked Lupovich to call investors who held these valid mortgages to get them to return their mortgages to Diamond. Defendant instructed Lupovich to tell investors that these mortgages were in default, that Diamond needed these mortgages back to correct the defaults, and that their mortgages would be returned or replaced as soon as the defaults were corrected. These mortgages were in fact valid and were not in default. Lupovich refused to call the investors. Defendant instructed Lupovich to have other Diamond officers and employees make these calls, which he did. As a result of these calls, the investors assigned their mortgages back to Diamond and were given receipts by a Diamond courier who picked up the mortgages. These valid mortgages were then assigned to Commerce Mortgage Investments, Ltd., to build up its assets for an audit.

The audit of Commerce Mortgage Investments, held between December of 1985 and March of 1986, revealed that half of its mortgages were invalid and needed to be replaced. These invalid mortgages were replaced by the valid mortgages which were fraudulently obtained from Obie investors. Defendant signed the assignments transferring these mortgages to Commerce. The Obie investors never got their mortgages back or replacements for them, nor did they receive any money from Diamond.

Defendant was charged with thirty-six counts of violating the Uniform Securities Act and two counts of larceny by false pretenses over $100.

Following his preliminary examination, defendant was bound over on nine counts of wilfully omitting facts with respect to the sale of a security, nine counts of securities fraud[1] and two counts of larceny by false pretenses.

In exchange for dismissal of the other charges against him, defendant pled nolo contendere to one count of obtaining money by false pretenses, MCL 750.218; MSA 28.415. Defendant's plea was conditioned upon reserving his right to appeal the denial of his pretrial motions. The court sentenced defendant to serve six years eight months to ten years in prison. As part of his sentence, defendant was ordered to pay restitution to the victims of his crimes to the extent possible. The court prohibited defendant's parole or release to a halfway house until this restitution was accomplished and ordered the Attorney General to monitor defendant's status and enjoin the Department of Corrections from releasing defendant until that time.

Defendant appeals his conviction and sentence as of right, raising numerous issues on appeal.

I

Defendant argues that §§ 101(2) and (3) of the Uniform Securities Act, MCL 451.501(2) and (3); MSA 19.776(101)(2) and (3), which defendant was charged with violating, are unconstitutional for various reasons. Defendant also contends that the district court erred in binding him over for trial on the counts involving violations of § 101(2) of the Uniform Securities Act. We decline to address these issues because they are moot. An issue becomes moot when an event occurs which makes it impossible for this Court to fashion a remedy. *Crawford Co v Secretary of State,* 160 Mich App

---

[1] MCL 451.501(2) and (3); MSA 19.776(101)(2) and (3).

88, 93; 408 NW2d 112 (1987). While trial was pending on defendant's securities act violations, he pled no contest to a different charge and the charges regarding those securities act violations were dismissed. Defendant was never convicted of those charges so it is not possible for this Court to fashion a remedy with regard to those dismissed charges. Defendant was not convicted or sentenced under the Uniform Securities Act, so defendant's claims on appeal regarding the constitutionality of the act's provisions or the validity of his bindover on those charges are moot.

II

Defendant argues that the trial court erred by denying his motion to sever his trial from that of his codefendant and by refusing to sever the two larceny counts from the counts charging securities act violations. We disagree.

Defendant first argues that the trial court erred by denying his pretrial motion to sever his trial from that of his codefendant, Gary Mitchell. Defendant claims that a separate trial was required because their defenses would have been antagonistic. Defendant also claims that, because Mitchell's wife was to be a witness and Mitchell would have precluded her testimony by raising a marital privilege, a joint trial would deny defendant Greenberg the right to confrontation.

Codefendants do not have an absolute right to separate trials. *People v Anderson,* 166 Mich App 455, 480; 421 NW2d 200 (1988). There is a strong policy favoring joint trials in the interests of justice, judicial economy, and administration. *Id.* The decision to hold a joint trial is within the trial judge's discretion and will not be reversed absent an abuse of discretion. *Id.* at 481. A motion for

separate trials must be supported by an affirmative showing of prejudice to the defendant's substantial rights. *Id.* at 481.

A motion to sever should be granted where the codefendants' separate defenses are antagonistic, such as where it appears that one defendant may testify to exculpate himself and to incriminate his codefendant. *People v Hurst,* 396 Mich 1, 6; 238 NW2d 6 (1976); *People v Jackson,* 158 Mich App 544, 555; 405 NW2d 192 (1987), lv den 428 Mich 917 (1987).

Defendant argues that his codefendant, Mitchell, was likely to accuse defendant in order to exculpate himself, so severance was necessary. We disagree. Defendants Greenberg and Mitchell's trial would have been a long and complex proceeding involving numerous witnesses and substantially identical evidence. To hold two trials on these substantially identical cases would have been unnecessarily duplicative and excessive. The interests of justice, judicial economy and orderly administration clearly called for a joint trial. Furthermore, the court held that the case against each defendant would have been tried in one trial by two separate juries and that either jury would be excused whenever appropriate so as to prevent prejudice due to potentially antagonistic defenses. This Court has approved the dual jury procedure as a means of avoiding the problems arising from jointly trying defendants with antagonistic defenses. *People v Kramer,* 103 Mich App 747, 754; 303 NW2d 880 (1981); *People v Brooks,* 92 Mich App 393, 396-397; 285 NW2d 307 (1979). Additionally, we note that the dual jury system would permit defendant Greenberg's counsel to question and cross-examine codefendant Mitchell's wife despite Mitchell's marital privilege merely by excusing Mitchell's jury during such questioning. The trial

court's proposed use of two juries was proper. The court did not err by refusing to sever defendant Greenberg's trial from Mitchell's.

Defendant also argues that the court erred by refusing to sever the two counts charging him with larceny by false pretenses from the other eighteen counts involving violations of the Uniform Securities Act. We disagree. All the charges against defendant grew out of defendant's participation and control over the Diamond Mortgage/ A. J. Obie fraud scheme. The Double Jeopardy Clauses of both the Michigan and United States Constitutions require joinder at one trial of all charges against a defendant growing out of a single criminal act, occurrence, episode, or transaction. *Crampton v 54-A Dist Judge,* 397 Mich 489, 501-502; 245 NW2d 28 (1976); *People v White,* 390 Mich 245; 212 NW2d 222 (1973). Since all of defendant's alleged crimes arose out of this single criminal scheme, it was proper to join them all in one trial.

III

Defendant argues that the evidence presented at his preliminary examination was insufficient to bind him over for the crime of larceny by false pretenses. Defendant claims that this bindover was improper because it was based upon the testimony of witness Leslie Lupovich, who he alleges was not worthy of belief, and because the evidence only established the lesser crime of larceny by trick. We disagree.

The function of a preliminary examination is to determine whether a crime has been committed and, if so, whether there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931; *People v Doss,* 406 Mich 90,

100; 276 NW2d 9 (1979). The prosecutor must show that the offense charged has been committed. Positive proof of guilt is not required, but there must be evidence on each element of the crime charged or evidence from which those elements may be inferred. *Id.* at 101.

The elements for the crime of larceny by false pretenses are as follows:

> (1) a false representation as to an existing fact, (2) knowledge by the defendant of the falsity of the representation, (3) use of the false representation with an intent to deceive, and (4) detrimental reliance by the victim on the false representation. [*People v Flaherty,* 165 Mich App 113, 119; 418 NW2d 695 (1987).]

In order to constitute a felony, the victim must give up over $100 due to the false representation. *Id.* The prosecutor presented adequate evidence showing each element of this crime. Testimony at defendant's preliminary examination showed that defendant knowingly instructed his employees to falsely inform A. J. Obie investors holding valid mortgages that their mortgages were in default when defendant knew that they were not. This was done in order to induce the investors to assign their mortgages back to Diamond so that supposed defaults could be remedied. Investors were told that their mortgages would be returned or replaced after the defaults were cured. Instead, defendant had the mortgages assigned to Commerce Mortgage Investments, Ltd., in order to bolster its assets for an upcoming audit. None of these mortgages were returned or replaced. These mortgages had values well over $100. The investors received nothing.

Nor is it relevant that defendant claims that the prosecution's witness, Lupovich, was not worthy of

belief. The object of a preliminary examination is not to prove guilt beyond a reasonable doubt. *Doss, supra,* p 103. Where the evidence conflicts or raises a reasonable doubt, such questions should be left for the jury at trial. *Id.* If Lupovich's testimony was subject to attack as unworthy of belief, that is a question for the jury at trial and does not undermine a decision to bind over.

Defendant also claims that his bindover was improper because the prosecutor failed to reveal potentially exculpatory evidence prior to the preliminary examination. We disagree. We note that defendant's claim that exculpatory evidence was withheld appears to be purely speculative and is not supported by facts on the record. The prosecution allowed defense counsel complete access to its files well in advance of the preliminary examination. Furthermore, defendant failed to raise this purported nondisclosure before either the district or circuit court, nor was it part of defendant's conditional no contest plea. Defendant has failed to preserve this issue for review, so we decline to address it. *People v New,* 427 Mich 482, 495; 398 NW2d 358 (1986).

IV

Defendant contends that his sentence was illegal for several reasons and that resentencing is required. Defendant argues that his six-year eight-month to ten-year sentence was so excessive as to shock the judicial conscience and require resentencing under *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). We disagree.

The sentencing guidelines recommended a minimum sentence of between zero and twelve months. However, departure from the guidelines is permitted provided that the sentencing judge gives spe-

cific explanations for departure where there are special characteristics of the offense or offender necessitating a departure. *People v Fleming,* 428 Mich 408, 426; 410 NW2d 266 (1987). The sentencing judge stated the following reasons for his departure from the guidelines range:

> Mr. Greenberg, it's clear to this Court, that you have perpetrated the largest *Ponsi* [sic] scheme in the history of this State upon the public. You have caused personal losses, as set forth in the Attorney General's sentencing memorandum, in excess of forty-seven million dollars to over sixteen hundred investors.
>
> The bankruptcy trustee says there are twenty-seven hundred investors who have lost this money. You've done this by selling undispersed [sic], and otherwise phoney mortgages, to unwitting elderly investors, exposed to clever advertising schemes by national celebrities, all while, in my opinion, you enjoyed an opulent lifestyle, sir.
>
> As evidenced in part by your large, six figure salary, your expense accounts, your corporate airplanes, your helicopter, your luxury automobile, and the like, your general decadence, lack of concern for your fellow man, and lack of sensitivity to those who worked around you, is quite apparent, and quite revolting, sir.
>
> The many letters I have received from elderly, retired people who have lost their hard earned life savings is heartbreaking to this Judge. . . .
>
> I'm satisfied, Mr. Greenberg, that you were clearly the singular guiding and controlling force behind the Diamond Mortgage Corporation and the A. J. Obie Enterprises. You controlled all the bank accounts, the transfer of funds, and generally, I believe, utilized these corporations for your own selfish interests, unconcerned about anyone else.
>
> Now, neither the legislature in enacting a maximum sentence provision, or the Supreme Court in requiring not more than a two-thirds minimum

> sentence in all felony convictions, in my opinion, could have envisioned a fraud scheme of this magnitude when they passed the statute, or when these cases were decided. Nor could they have imagined the extent of greed that I believe you've displayed. Your conduct of these businesses, in short, was despicable. You deserve the harshest sentence the law permits me to impose.

These reasons were more than adequate under *Fleming.* In view of the facts of this case, our conscience is not shocked by the length of defendant's sentence. These facts belie a mathematical comparative analysis because of the enormity of the economic havoc wreaked.

Defendant also argues that the court erred by requiring defendant to pay restitution. Defendant contends that the court exceeded its authority by requiring him to pay restitution to victims of crimes where charges based on those crimes were ultimately dismissed and to pay restitution to victims who were not specifically named. We disagree.

A sentencing judge may order a defendant to pay restitution in addition to any other penalty authorized by law. MCL 769.1a, 780.766(2); MSA 28.1073, 28.1287(766)(2). A court may order restitution for losses to a victim of a defendant's course of conduct which gives rise to the conviction. MCL 769.1a; MSA 28.1073. Such restitution may exceed the losses caused by the actual crime of which defendant is eventually convicted. *People v Littlejohn,* 157 Mich App 729, 731; 403 NW2d 215 (1987). The language of MCL 769.1a; MSA 28.1073 permits ordering restitution for other related crimes which have not resulted in convictions. *Littlejohn,* 157 Mich App at 733 (MICHAEL J. KELLY, J., concurring). The trial court did not exceed its authority by ordering defendant to pay

restitution, to the extent he was financially able, to all the victims of his mortgage fraud scheme.

Nor did the trial court err by ordering restitution without specifying to whom and in what amount restitution was necessary. The bankruptcy trustee had not yet computed the extent of investors' losses at the time of defendant's sentencing. Under these circumstances, the trial court was as specific as possible. Additionally, when defendant believes that he has complied with the restitution conditions to the extent possible, he may petition the court for relief in accordance with *People v Music,* 428 Mich 356, 361-362; 408 NW2d 795 (1987).

Defendant also claims that the trial court exceeded its authority by prohibiting defendant's parole or release to a halfway house until restitution, to the extent possible, is accomplished. The court also instructed the Attorney General to monitor defendant's status and enjoin the Department of Corrections from releasing defendant until restitution is made.

The Department of Corrections has exclusive jurisdiction over paroles, commutations, and penal institutions, subject to the constitutional powers of the state's Judicial and Executive Departments. MCL 791.204; MSA 28.2274. MCL 791.233; MSA 28.2303 lists the requirements for a grant of parole by the Department of Corrections. Nowhere is there any mention of the sentencing judge's ability to impose additional restrictions upon the department's decision to parole a prisoner. Although MCL 791.234(4)(b); MSA 28.2304(4)(b) provides that the sentencing judge may veto a grant of parole for a prisoner serving a life sentence by filing written objections to the parole grant within thirty days of receipt of notice of the parole hearing, there is no analogous statutory parole veto power

given to sentencing judges for offenders like defendant. Additionally, we note that MCL 780.766(13); MSA 28.1287(766)(13) provides that any restitution ordered shall be a condition of parole and that the parole board may revoke parole if the defendant fails to comply. However, this statute does not give the sentencing judge the power to make full payment of restitution a prerequisite for obtaining parole or early release. The lower court exceeded its sentencing power by prohibiting defendant's parole or release to a halfway house until restitution is made and by ordering the Attorney General to enjoin the Department of Corrections from releasing defendant until that time. Accordingly, we hereby strike these conditions from defendant's sentence. Resentencing is not required.

Defendant also asserts that his sentence is unconstitutional because it is cruel and unusual and violates the Separation of Powers Clauses of the Michigan and United States Constitutions. Defendant does not provide any authority for this assertion or even bother to explain how his sentence could be considered to violate these constitutional provisions. A mere assertion of error without supporting authority or argument is insufficient to bring an issue before this Court. *Settles v Detroit City Clerk,* 169 Mich App 797, 807; 427 NW2d 188 (1988). We therefore decline to address these issues.

Affirmed as modified.