PEOPLE v HICKS

PEOPLE v SCOTT

Docket Nos. 98415, 98454. Submitted December 14, 1989, at Lansing.
Decided May 17, 1990.

James Hicks and Andre Scott were jointly tried in Muskegon
Circuit Court, James M. Graves, Jr., J., on assault and murder
charges arising from an incident at a gambling house. Hicks
was convicted of three counts of assault with intent to rob
while armed and possession of a firearm during commission of
a felony, and Scott was convicted of one count of first-degree
murder, two counts of assault with intent to rob while armed
and felony-firearm. Each defendant appealed. The appeals were
consolidated.

The Court of Appeals *held:*

1. While the trial court abused its discretion in holding that
Scott could be impeached by use of evidence of his prior
conviction for carrying a concealed weapon, that error was
harmless under the circumstances and in light of the strength
of the evidence against Scott.

2. The misrepresentation of the police relative to the finding
of defendant Scott's fingerprints was insufficient to render his
otherwise voluntary statement involuntary.

3. The trial court properly found that the statement given by
Hicks following his polygraph examination was voluntary.

4. Since the jury had been admonished to refrain from
listening to, reading or watching any media coverage of the
trial, reversal is not mandated by reason of the trial court's
refusal to voir dire the individual jurors on the question

REFERENCES

Am Jur 2d, Criminal Law § 690; Evidence §§ 551, 571, 572; Trial
§ 22; Witnesses §§ 525, 528.

Admissibility in evidence of confession made by accused in anticipa-
tion of, during, or following polygraph examination. 89 ALR3d
230.

Antagonistic defenses as ground for separate trials of codefendants
in criminal case. 82 ALR3d 245.

whether any of them had seen and read a newspaper account about the trial which had been published during the trial.

5. The trial court properly denied the motion for separate trials.

6. Reference to the fact that one codefendant allegedly indicated that he was willing to incriminate the other in exchange for favorable treatment is not so prejudicial as to amount to manifest injustice.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — IMPEACH-
MENT — HARMLESS ERROR.

A trial court's erroneous determination that the probative value for impeachment purposes of evidence of a criminal defendant's prior convictions outweighed its prejudicial effect does not mandate reversal where there is no indication that the defendant, had he testified, would have offered anything other than a general denial and the evidence was overwhelming; the error is harmless under such circumstances.

2. CRIMINAL LAW — EVIDENCE — VOLUNTARY STATEMENTS — POLICE
MISREPRESENTATIONS.

The fact that the police misrepresented to defendant the fact that his fingerprints were discovered on an article retrieved from the crime scene is insufficient to render an otherwise voluntary statement relative to that article involuntary.

3. CRIMINAL LAW — EVIDENCE — CONFESSIONS — POLYGRAPH EXAMI-
NATIONS.

Neither public policy nor federal or state law requires that statements made before, during, or after the administration of a polygraph examination are excludable per se from evidence at trial.

4. CRIMINAL LAW — JURY — MEDIA COVERAGE.

The failure of a trial court to inquire into juror exposure to a prejudicial newspaper article does not mandate reversal of a criminal defendant's conviction where the article was printed after the jury had been admonished to avoid media coverage and the article in question was not in a conspicuous area of the newspaper.

5. CRIMINAL LAW — JOINT TRIALS — SEVERANCE.

A motion for separate criminal trials should be granted where the codefendants' separate defenses are antagonistic; a defendant who moves for severance bears the burden of proving that

he has substantial rights which will be prejudiced by a joint trial.

*Frank J. Kelley,* Attorney General, *Harold F. Closz, III,* Prosecuting Attorney, and *Judith K. Simonson,* Assistant Prosecuting Attorney, for the people.

*Patricia S. Slomski,* for defendant Hicks.

State Appellate Defender (by *P. E. Bennett*), for defendant Scott.

Before: REILLY, P.J., and CYNAR and T. M. BURNS,* JJ.

PER CURIAM. These consolidated cases arise out of the same incident in an after-hours gambling house in Muskegon, Michigan. Following a joint jury trial in November, 1986, defendant Andre Scott was convicted of first-degree felony murder, MCL 750.316; MSA 28.548, two counts of assault with intent to rob while armed, MCL 750.89; MSA 28.284, and possession of a firearm during commission of a felony, MCL 750.227b; MSA 28.424(2). Scott was sentenced to life imprisonment without parole for the murder conviction, one hundred to three hundred years imprisonment for the assault convictions and a consecutive two-year term for the felony-firearm conviction. Defendant James Hicks was convicted of three counts of assault with intent to rob while armed, MCL 750.89; MSA 28.284, and felony-firearm, MCL 750.227b; MSA 28.424(2). Hicks was sentenced to fifty to two hundred years imprisonment for the assault convictions and a consecutive two-year term for the felony-firearm conviction. Defendants now appeal as of right. We affirm as to both defendants.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

I

Scott first contends that the trial court erred in refusing to suppress the use for impeachment purposes of evidence of his 1983 conviction of carrying a concealed weapon. Scott claims that, because of the court's ruling, he chose not to testify and thus could not present a defense.

The trial court's decision to allow impeachment by evidence of a prior conviction is within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. *People v Frey,* 168 Mich App 310, 313; 424 NW2d 43 (1988). However, in *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988), reh den 430 Mich 1201 (1988), our Supreme Court provided a clarified balancing test to be applied in determining whether there was an abuse of discretion. This test applies retroactively to all cases tried before March 1, 1988, in which the issue of admissibility under MRE 609(a) has been raised and preserved in the trial court. *Id.* at 609. Because the instant appeal is such a case, we must review the trial court's decision under the *Allen* test.

> For purposes of the probativeness side of the equation, only an objective analysis of the degree to which the crime is indicative of veracity and the vintage of the conviction would be considered, not either party's need for the evidence. For purposes of the prejudice factor, only the similarity to the charged offense and the importance of the defendant's testimony to the decisional process would be considered. The prejudice factor would, of course, escalate with increased similarity and increased importance of the testimony to the decisional process. Finally, unless the probativeness outweighs the prejudice, the prior conviction would be inadmissible. [*Id.* at 606.]

On the probative side of the equation, we note that the conviction three years earlier offered little, if any, indication of Scott's truthfulness. As to its prejudicial effect, it is clear that the conviction for carrying a concealed weapon was similar in some respects to the charge of use of a weapon in the commission of a felony. Further, Scott's testimony was important to the decisional process because, without his testimony, the jury heard only the prosecution's witnesses, subject, of course, to defense counsel's cross-examination. In light of the low probative value of the prior conviction and the obvious prejudice, we find that the prejudice outweighed the probativeness and that the trial court abused its discretion.

Nevertheless we do not find that reversal is warranted. As the trial was held before the *Allen* decision, Scott was not required to testify in order to preserve his right to appeal the admission of the prior conviction. However, he made no offer of proof as to the nature of his testimony and how it would contradict the numerous eyewitnesses who identified him as the assailant. As Scott did not claim an alibi defense, his testimony, at best, would have been a denial of his involvement in the crimes charged. Counsel's intensive cross-examination of the prosecution witnesses and his argument that a misidentification occurred placed Scott's theory of defense before the jury. Considering the number of witnesses who identified Scott and the lack of any suggested motive for them to falsify their identification, we believe there was overwhelming evidence against Scott. On the basis of the evidence and arguments presented, we believe reasonable jurors would find Scott guilty beyond a reasonable doubt even if evidence of the prior conviction had been suppressed and defendant had been allowed to testify. We therefore find the error

to have been harmless. *Allen, supra* at 611-612; *People v Reed,* 172 Mich App 182, 187-188; 431 NW2d 431 (1988).

II

Scott also contends that the trial court erred in failing to suppress a statement he made to the arresting officer that his prints were probably on the forepiece of the shotgun found at the blind pig because he sold the shotgun to a man who was going to Muskegon. Scott contends that his statement was involuntary because it was improperly induced by a detective's false statement that his fingerprints were found on a part of a sawed-off shotgun retrieved from the crime scene.

On appeal from a *Walker*[1] hearing, we are required to examine the entire record and reach an independent determination of the voluntariness of defendant's statements. *People v Catey,* 135 Mich App 714, 721; 356 NW2d 241 (1984), lv den 422 Mich 940 (1985). We will affirm the trial court's ruling unless it is clearly erroneous, such that we have a definite and firm conviction that a mistake has been made. *People v Watkins,* 178 Mich App 439, 447-448; 444 NW2d 201 (1989).

The voluntariness of a statement must be determined from all of the facts and circumstances, including the duration of detention, the manifest attitude of the police toward the suspect, the physical and mental state of the suspect, and the pressures which may sap or sustain the suspect's powers of resistance or self-control. *Id.; People v Kvan,* 160 Mich App 189, 196; 408 NW2d 71 (1987).

We are not left with a definite and firm convic-

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

tion that the trial court erred in finding defendant's statement voluntary. It is undisputed that defendant had been advised of his *Miranda*[2] rights before he made the statement to police. Furthermore, the fact that the police misrepresented the fact to defendant that his fingerprints were discovered on an article retrieved from the crime scene is insufficient to make this otherwise voluntary statement involuntary. *Frazier v Cupp,* 394 US 737; 89 S Ct 1420; 22 L Ed 2d 684 (1969). While we do not condone such action by the interrogating officer, we cannot say that the admission of an unrelated crime under the circumstances here was compelled by trickery. The trial court did not err in ruling that defendant's statement was admissible.

### III

Hicks argues that the trial court erred in failing to suppress a statement he made to police following the testing phase of a polygraph examination. Hicks first contends that his statement was involuntary because he was not advised again of his *Miranda* rights during a limited exchange that ensued shortly after the machine was shut off. We disagree.

Recently, in *People v Ray,* 431 Mich 260, 268; 430 NW2d 626 (1988), our Supreme Court held that "neither public policy nor federal or state law requires that statements made before, during, or after the administration of a polygraph examination are excludable per se as evidence at trial." The admissibility of postpolygraph interview statements is to be resolved by a review as to whether in the "totality of the circumstances" Hicks'

[2] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 964 (1966).

waiver of his Fifth Amendment rights was knowing and voluntary. *Id.* at 276.

Here, the only circumstance intervening between the time in which Hicks was initially informed of his rights and the postexamination questioning was the 2½ hour time period that encompassed the preinterview conversation, the test itself, and the postexamination questioning. Furthermore, the same individual who had previously warned Hicks of his rights also conducted the postexamination questioning. Thus, as in *Ray,* it was not reasonable to expect the examiner to readvise Hicks of his rights at that time. Moreover, Hicks' waiver expressly extended to the postexamination questioning.

We also reject Hicks' claim that his statement was made during the process of plea negotiations and therefore inadmissible under MRE 410. Our review of the record indicates that MRE 410 is inapplicable in the instant case because the possibility of a guilty plea was never discussed nor was one offered or accepted. *People v Heffron,* 175 Mich App 543, 546; 438 NW2d 253 (1988).

IV

Both defendants contend that the trial court committed error requiring reversal in refusing to voir dire the jurors in order to determine the extent of their exposure to a newspaper article which made reference to defendants' prior convictions. We disagree.

The jury selection in the instant action began on October 28, 1986, in a normal fashion. After the jury had been sworn, the trial court admonished against listening to, reading or watching news reports relating to the trial:

During the time you serve on this jury, there may appear in the newspapers or on radio or television reports concerning this case, and you may be tempted to read, listen to or watch them. Please do not do so. Due process of law requires that the evidence to be considered by you in rendering your verdict meet certain standards.

For example, a witness may testify about events he himself has seen or heard, but not about matters of which he was told by others. Also, witnesses must be sworn to tell the truth, and must be subject to cross-examination. News reports about the case are not subject to these standards, and if you read, listen to or watch these reports, you may be exposed to misleading or inaccurate information, which unduly favors one side and to which the other side is unable to respond. In fairness to both sides, therefore, it is essential that you comply with this instruction.

At the conclusion of the prosecution's opening statement, the trial court again admonished the jurors: "Please do not read, watch or listen to any newspaper, television or radio reports regarding this case." The jury was then excused for the day.

On October 29, page twenty-eight of the *Muskegon Chronicle* contained an article under a headline that read "Arguments continue in gambling house murder trial." The article referred to evidentiary matters which took place out of the presence of the jury and referred to both defendants' prior convictions:

Assistant Muskegon County Prosecutor Les Bowen sought inclusion of prior convictions, which for Scott are two: manslaughter in 1972 and carrying a concealed weapon in 1983.

Hicks' prior convictions are: manslaughter, 1972; attempted larceny in a building, 1982; armed robbery, 1985; and receiving and concealing stolen property valued over $100, 1985.

Defendants subsequently moved to individually voir dire the jury. Defendants' motions were denied as was a motion for mistrial. The trial court declined to question the jury stating that it felt that the court's standard instructions had sufficiently covered the matter. On appeal, defendants challenge this denial as having deprived them of their Sixth Amendment right to a fair and impartial jury. We disagree.

We begin our analysis by noting that we are troubled by the trial court's failure to voir dire the jury. However, the trial court's failure to inquire into juror exposure to prejudicial news accounts does not necessarily mandate the reversal of defendants' convictions. *United States v Manzella,* 782 F2d 533, 542-543 (CA 5, 1986). Rather, courts have focused upon the timing and prominence of the newspaper article, the nature and number of the trial court's warnings concerning media coverage, the prejudice to defendants and the likelihood that the publicity has in fact reached the jury. *Id.; United States v Ricardo,* 619 F2d 1124 (CA 5, 1980), cert den 449 US 1063; 101 S Ct 789; 66 L Ed 2d 607 (1980). In the instant case, the article was published following the prosecution's opening statement. The headline would have put any reasonable juror on notice that the article related to the trial of Scott and Hicks. The article did not appear in the most conspicuous area of the newspaper, but on page twenty-eight. These circumstances do not lead us to conclude that the jurors would have been hard pressed to avoid the article. Finally, on at least three occasions immediately prior to the publication of the article, the trial judge admonished the jury not to consider any sources of media information. We believe these admonitions concerning media coverage were adequate to ensure that defendants received a fair

trial free from media reports of nonadmissible evidence.

Assuming, arguendo, that the jurors read the article, believed the statements to be true, and evaluated the defense theories in light of the prior convictions, there is no question that the defendants would have been prejudiced by such revelation. However, as noted above, the evidence against both defendants was overwhelming. At least ten witnesses identified Scott as one of the perpetrators, while at least six witnesses identified Hicks as Scott's accomplice. We therefore find the trial court's failure to voir dire the jury to have been harmless beyond a reasonable doubt.

v

Defendants contend that the trial court committed error requiring reversal in denying their motions for separate trials. We disagree.

The decision as to whether codefendants will be tried separately or jointly rests within the sound discretion of the trial judge and will not be reversed on appeal absent an abuse of that discretion. MCL 768.5; MSA 28.1028; *People v Greenberg,* 176 Mich App 296, 303-304; 439 NW2d 336 (1989).

A motion to sever should be granted where the codefendants' separate defenses are antagonistic, such as where it appears that one defendant may testify to exculpate himself and to incriminate his codefendant. *Id.* When a defendant moves for severance, he bears the burden of proving that he has substantial rights which will be prejudiced in a joint trial. *People v Jackson,* 158 Mich App 544, 556; 405 NW2d 192 (1987), lv den 428 Mich 917 (1987).

Applying these factors to the instant case, we

are not persuaded that the trial court abused its discretion in denying defendants' motions to sever. We see no evidence that defendants carried their burden of demonstrating that their defenses were antagonistic. Both defendants denied any involvement in the crime and their defenses were that of mistaken identity. In addition, any statements made by either defendant were edited to eliminate reference to the other. To hold two separate trials on these nearly identical cases would have been unnecessarily duplicative and excessive. The lack of prejudice to defendants, the nature of the evidence, and the number of witnesses support our conclusion that a joint trial was appropriate.

VI

Scott further argues that he was prejudiced when Detective Jurkas, on cross-examination by Hicks' counsel, testified that Hicks repeatedly tried to "make a deal" and even stated that he would be willing to testify against Scott. In his closing argument Hicks' counsel mentioned Hicks' offer to make a deal several times, and stated: "And Hicks said: I'll lay it all out for you, including Andre [Scott], Pee Wee, Rabbit, and Deno." Scott's failure to object to the alleged error at trial precludes review of the issue by this Court absent a miscarriage of justice. *People v Dalessandro,* 165 Mich App 569, 578; 419 NW2d 609 (1988). We find no such miscarriage of justice as Scott has made no affirmative showing of prejudice. A statement allegedly made by a codefendant that he is willing to incriminate others to get favored treatment for himself is not so prejudicial as to amount to manifest injustice.

Affirmed as to both defendants.