*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 10, 2020

Plaintiff-Appellee,

v

No. 344472
Wayne Circuit Court
LC No. 13-009150-01-FC

THOMAS LEE WINGARD,

Defendant-Appellant.

Before: LETICA, P.J., and FORT HOOD and GLEICHER, JJ.

PER CURIAM.

Defendant, currently serving a 15-to-25-year sentence of imprisonment for second-degree murder, MCL 750.317, appeals as on leave granted[1] the trial court's order denying his motion for a new trial. We affirm.

## I. BACKGROUND

On August 18, 2013, the body of defendant's wife was found in the recreational vehicle that the couple lived in. *People v Wingard*, unpublished per curiam opinion of the Court of Appeals, issued January 14, 2016 (Docket No. 323316), p 1. On August 28, 2013, defendant made a statement to a police officer, Nancy Foster, regarding the killing and was arrested. *Id*. at 1-2. Defendant was convicted and sentenced. *Id*. Defendant then appealed. *Id*. On appeal, defendant argued that his August 28, 2013 statement to Foster was involuntary, that he received ineffective assistance of counsel, and that he was denied a hearing to determine the voluntariness of his statement. *Id*. at 4-8. We rejected defendant's arguments and affirmed his conviction and sentence in an unpublished, per curiam opinion on January 14, 2016. *Id*. at 1.

---

[1] *People v Wingard*, 504 Mich 978 (2019).

In our opinion, we presented the following relevant facts:

At approximately 6:00 a.m. on August 18, 2013, Detroit Police Officers DeAndre Gaines and Darrell Lightfoot were dispatched to 2277 Longfellow Street in Detroit, Michigan. Upon arriving at the scene, defendant made contact with the officers and identified himself as the individual who had called 911. According to defendant, he and his wife had been living in a recreational vehicle (RV) behind the house at the Longfellow address since a 2009 house fire. He explained to the officers that he awoke at 3:36 a.m. on the 18th after hearing his dogs barking, took his dogs from the RV into the house to eat, worked on the house's water heater for approximately an hour, and then returned to the RV. When he returned to the RV, defendant noticed that the RV door was open and found his wife's body in a pool of blood on the bed inside. Defendant indicated that he immediately called 911 and performed cardiopulmonary resuscitation (CPR) until the officers arrived. The officers found a bloody, 21-and-a-half-inch pipe underneath defendant's wife's body at the scene.

On August 22, 2013, defendant contacted Detroit Police Officer Nancy Foster, the officer in charge on this case, and requested permission to obtain his wallet. Foster agreed, and defendant retrieved his wallet from her on the same day. The only exchange between Foster and defendant during this interaction was defendant "ask[ing] how the investigation was going," and Foster replying that "it was still being investigated." Shortly after leaving, however, defendant returned to the police station and asked to speak with Foster. Foster advised defendant of his *Miranda*[2] rights, and defendant agreed to make a statement and initialed and signed a form indicating the same. Defendant answered several questions in similar fashion to the statement he had made to the officers on August 18, 2013. He added, however, that earlier on the 18th, "a man" had come to his home, spoke with his wife, and inquired as to whether they had "any work" available. After signing his statement, Foster asked defendant if he would be willing to return for a second interview at a later date, and defendant agreed to do so.

The second interview took place on August 28, 2013, at the Dearborn Police Department, and defendant was transported by Foster and another officer to that location. Upon arriving, defendant agreed to participate in a polygraph examination with an individual who is only referred to as "Sergeant Gee" in the record. It appears that the polygraph examination lasted from "about" 5:00 p.m. until approximately 11:30 p.m. After that interview, defendant again agreed to make a statement to Foster after being advised of his *Miranda* rights. During trial, Foster described that statement as follows:

*Prosecutor*: All right. Can you please again review, go in question and answer format beginning on the page right after the advice of rights page.

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

*Foster*: Yes. The first question is "tell me what happened to your wife on August 18th, 2013 when you turned the lights on in your RV and saw her bloody?

"Answer. I woke up around 3:36 a.m. and touched Maryann and she was wet. I turned the lights on and I saw that she was bloody and a pipe was in the bed with her. She slept next to the window and the pipe was between her and the window.

"Question. In an earlier interview you told me that you took the dogs in the house to feed them. Was that true?

"Answer. No. I don't know.

"Question. You also said that no one broke into the RV and the only person that could have killed her was you?

"Answer. Yes. It has to be.

"Question. Did you also say that you went to bed with Maryann around 10:00 p.m. and woke up around 3:36 a.m. and no one else was in the RV?

"Answer. Right. Another thing is I went in the house, but I didn't remember going in there. But there was a clear space to fix my water heater, but I don't remember of [sic] doing it.

"Question. You know why you killed your wife?

"Answer. No. Not at all. Things seemed to be coming together with the money and all and the house and the lawsuit over -- an [sic] lawsuit over with.

"Question. Do you know why you lied to me about going in the house and someone else come to the RV and kill Maryann?

"Answer. No. I guess to protect myself. That's the only, that's the only thing that I can think of.

"Question. You definitely know that no one came in your RV and killed your wife?

"Answer. I don't know, but it's the only logical explanation."

After completing his statement, defendant reviewed and signed it without making any changes. That interview lasted an additional hour. He was thereafter placed under arrest and eventually charged with first-degree murder, MCL 750.316(1)(a).

At trial, defendant testified and denied murdering his wife. He described their 36-year marriage as generally positive and said that the statement above, while his, was "[t]otally almost all fabricated." He testified that Gee did not believe his

original statement and made him change his mind regarding what had happened. He explained that Gee suggested to him that this was "the only possible way that that could have happened" and admitted accepting that explanation. [*Id*. at 1-3 (footnotes omitted).]

Defendant appealed our decision to our Supreme Court. *People v Wingard*, 500 Mich 1015; 895 NW2d 928 (2017). On June 21, 2017, the Court vacated the portion of our opinion addressing *Miranda*. *Id*. The Court then remanded the case to the Wayne Circuit Court for an evidentiary hearing, pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). *Wingard*, 500 Mich at 1015. The Court directed the circuit court to "determine whether trial counsel was ineffective for failing to move to suppress the defendant's confession under *Miranda v Arizona*, 384 US 436 (1966), and *Missouri v Seibert*, 542 US 600 (2004)." *Wingard*, 500 Mich at 1015.

In March 2018, the trial court held defendant's *Ginther* hearing. Sergeant Jeffrey Gee, Sergeant Foster, Robert Kinney, and defendant testified to the following at the hearing. Sergeant Gee conducted a polygraph examination of defendant after advising defendant of his *Miranda* rights and, during postexamination questioning, defendant changed his story of what happened to his wife. Sergeant Foster then interviewed defendant and he confessed to killing his wife. Kinney, defendant's trial counsel, did not move to suppress defendant's confession. After the hearing, the trial court denied defendant's motion for a new trial.

On July 1, 2018, defendant filed a delayed application for leave to appeal. On November 13, 2018, we entered an order denying defendant's delayed application for leave to appeal. *People v Wingard*, unpublished order of the Court of Appeals, entered November 13, 2018 (Docket No. 344472). Defendant appealed our order to the Supreme Court. *People v Wingard*, 504 Mich 978; 933 NW2d 693 (2019). On October 17, 2019, our Supreme Court remanded the case to us, stating that "[t]he defendant was entitled to an appeal of right because he sought to appeal an order entered by the trial court following a remand from an appellate court in a prior appeal of right." *Id*.

This appeal follows that remand.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues on appeal that his trial counsel was ineffective for failing to move for the suppression of defendant's August 28, 2013 confession to Sergeant Foster, and his appointed counsel on remand ineffectively questioned the witnesses who testified at defendant's *Ginther* hearing. We disagree.

"[D]efendant's claim of ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Lane*, 308 Mich App 38, 67; 862 NW2d 446 (2014) (quotation marks omitted). We review findings of fact for clear error, while we review questions of law, including constitutional law, de novo. *Id*. at 67-68. "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016).

The Michigan Constitution and the Sixth Amendment to the United States Constitution both guarantee the "right to the effective assistance of counsel." *Id*. at 672. "To establish

ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. We presume that counsel gave defendant effective assistance. *Lane*, 308 Mich App at 68. "A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different." *Id*.

## A. TRIAL COUNSEL

Defendant argues in his counseled and Standard 4 briefs that his trial counsel, Kinney, was ineffective for failing to move for the suppression of defendant's August 28, 2013 confession to Sergeant Foster. This argument lacks merit.

First, defendant contends that Kinney should have moved to suppress his statement to Sergeant Foster because defendant received a promise of no jail time in exchange for the incriminating statements he made to authorities. According to defendant, during the polygraph process, Sergeant Gee told him that the police had a lot of evidence against him, and that, if they could come up with a logical explanation for the killing, they could reduce defendant's chance of being sentenced to life in prison to sentences involving little to no jail time. Defendant has failed to establish that Kinney actually knew about Sergeant Gee's alleged promise of leniency. At the *Ginther* hearing, Kinney replied no when asked : "And was there anything in your discussions, either in the letters or your physical discussions with the defendant, that would indicate that his statements to the police were involuntary such that they would violate *Miranda*?" The trial court explicitly found that Kinney's testimony was credible. We cannot conclude that this was clearly erroneous, as we must give regard "to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). Thus, defendant has failed to establish that Kinney knew about the alleged promise of leniency; therefore, defendant cannot prove that Kinney's failure to act on the alleged promise constituted ineffective assistance.

Second, defendant has failed to establish that even if Kinney had moved to suppress defendant's August 28, 2013 confession, such a motion was likely to succeed. On appeal, defendant merely asserts: "Defense counsel's performance fell below an objective standard of reasonableness because if Mr. Wingard's claim his confession was only made in exchange for a promise of no jail time, the involuntary nature of this confession would have supported a request to suppress it under *Walker*.[3]" He does not provide any caselaw that demonstrates that a confession made in exchange for a promise of no jail time makes a confession involuntary. Furthermore, defendant himself did not testify that Sergeant Gee made a promise of no jail time in exchange for a confession. Rather, defendant testified that "[h]e said if we could come up with a logical explanation of what happened that night, I could reduce my chances of prison, from little or no jail time, as opposed to the rest of my life in prison." This was not a promise of no jail time at all in exchange for a confession. To the contrary, depending on what information defendant provided about the circumstances surrounding his wife's murder, he would face no jail time (defendant was not the killer or he acted in self-defense) up to life imprisonment for premeditated murder. Furthermore, the confession that was admitted at trial was made to Sergeant Foster, not

---

[3] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

-5-

Sergeant Gee, although defendant originally indicated that Gee manipulated his eventual confession. Nonetheless, there is no allegation that Sergeant Foster made any promise of leniency. Therefore, defendant has failed to establish his counsel was ineffective for not moving for the suppression of defendant's confession on this ground.

In his Standard 4 Brief, defendant raises seven issues related to Kinney's failure to move for suppression of the confession: (1) *Miranda* warnings; (2) failure to record; (3) accusatory nature; (4) misleading results; (5) deceit and exaggeration; (6) promise of leniency; and (7) coerced, involuntary confession. We address each in turn.

First, defendant argues that he should have been advised of his *Miranda* rights after the polygraph examination and before Sergeant Gee began his postpolygraph interview. In *People v Ray*, 431 Mich 260; 430 NW2d 626 (1988), our Supreme Court considered this exact issue. Here, like in *Ray*, defendant signed a waiver stating that anything he said both before and after the polygraph examination could be used against him. *Id*. at 275. The Court in *Ray* "conclude[d] in the circumstances of this case that it was not necessary to rewarn the defendant of his constitutional rights in the limited exchange that ensued immediately after the polygraph machine was shut off." *Id*. at 276. The Court explained:

> In this case, the only circumstance intervening between the preexamination rights and postexamination questioning which was alleged to be of moment was the two-hour time period that encompassed the preinterview conversation, the test itself and the postexamination interview. In addition, the same person who had warned defendant of his rights the first time, and who conducted the polygraph examination, also conducted the postexamination questioning. Therefore, . . . it was not reasonable to expect a re[-]warning of those rights at that time. Finally, and most importantly, the defendant's waiver expressly extended to a postexamination interview. [*Id*. at 276-277 (citation omitted)].

The facts in this case are similar to those the Court described in *Ray*. Therefore, it was not necessary for Sergeant Gee to rewarn defendant before the postexamination interview and Kinney was not ineffective for not moving to suppress on the basis of Sergeant Gee's failure to advise defendant of his *Miranda* rights before the postexamination interview.

Second, defendant argues that the interview with Sergeant Gee should have been recorded. Defendant points to MCL 763.8(2), which states:

> A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.

This section is inapplicable in this case because defendant was not in custodial detention at the time of his interview with Sergeant Gee. Defendant voluntarily agreed to take a polygraph examination and was not under arrest at the time of the examination. Thus, there was no

requirement that the interview between Sergeant Gee and defendant be recorded. Therefore, Kinney was not ineffective for not moving to suppress defendant's confession on this ground.

Third, defendant argues that the postexamination interview with Sergeant Gee was accusatory in nature and that he should have been advised of his *Miranda* rights before this interview. This argument fails, as defendant was in fact advised of his *Miranda* rights before the administration of the polygraph examination. Therefore, Kinney was not ineffective for not moving to suppress defendant's confession on this ground.

Fourth and fifth, defendant argues that Sergeant Gee misled him after the polygraph examination when Sergeant Gee told him that the polygraph results would not clear him when the results were actually inconclusive, and when Sergeant Gee told defendant that the police had all of the evidence against him. We have previously held that a police officer's misrepresentation during an interview is not sufficient to make an otherwise voluntary statement involuntary. *People v Hicks*, 185 Mich App 107, 112-113; 460 NW2d 569 (1990). Therefore, Kinney did not provide ineffective assistance of counsel when he did not move to suppress on these grounds.

Sixth, defendant argues that Sergeant Gee promised him leniency in exchange for a confession. As previously discussed, even if this allegation is true, defendant has not established that Kinney knew of the promise of leniency. If Kinney did not know about the promise of leniency, then he cannot be considered ineffective for not moving to suppress on this ground.

Seventh, defendant raises a challenge under *Missouri v Seibert*, 542 US 600; 124 S Ct 2601; 159 L Ed 2d 643 (2004). In *Seibert*, the United States Supreme Court analyzed the legality of a police tactic, in which a defendant first confessed, and then was advised of her *Miranda* rights and repeated her confession. *Id*. at 604. The Court held "that a statement repeated after a warning in such circumstances is inadmissible." *Id*. We conclude that *Seibert* is not applicable in this case because defendant was advised of his *Miranda* rights before his interview with Sergeant Gee. For *Seibert* to be applicable in this case, defendant must have confessed to Sergeant Gee without having first been advised of his *Miranda* rights and then received *Miranda* rights from Sergeant Foster before repeating his confession. As this did not occur here, *Seibert* is inapplicable. Therefore, Kinney did not provide ineffective assistance of counsel when he did not move to suppress defendant's statement under *Seibert*.

## B. REMAND COUNSEL

In his Standard 4 brief, defendant also argues that his remand counsel, Jonathan B.D. Simon, was ineffective in his examination of witnesses at the *Ginther* hearing, failed to present certain documentary evidence, and made inaccurate statements during his closing argument.

Because defendant did not move for a new trial or evidentiary hearing on these grounds, "our review is limited to mistakes apparent from the record." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018). "The test for ineffective assistance of appellate counsel is the same as that for trial counsel." *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002).

Defendant points to numerous ways in which Simon could have questioned witnesses differently. Even if Simon had questioned witnesses and presented arguments exactly how defendant wanted him to, defendant cannot establish that this would have changed the outcome of

the hearing because, as discussed above, no *Miranda* or *Siebert* violations occurred. Defendant complains that Simon was not properly focused on establishing that a *Miranda* or *Seibert* violation occurred, but defendant's suggestions would not have helped establish such violations because no such violations occurred. Furthermore, the examination of witnesses and the presentation of evidence are matters of strategy. *People v Payne*, 285 Mich App 181, 189-190; 774 NW2d 714 (2009); *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). "We will not substitute our judgment for that of counsel on matters of . . . strategy, nor will we use the benefit of hindsight when assessing counsel's competence." *Id*. (quotation marks omitted). After our review of the record, we cannot conclude that appellate counsel's questioning of witnesses during the *Ginther* hearing fell outside of the norms of professional competence.

In regard to Sergeant Gee, defendant argues that Simon should have demanded the original copy of the polygraph waiver advice form be produced at the *Ginther* hearing. Defendant had an opportunity at the hearing to testify about the form and admitted that the initials and signature on the form looked like his. He also testified that he did not believe Sergeant Gee forged his signature. Thus, there was no reason to demand the original form be produced at the hearing.

Defendant also argues that Simon did not focus enough on the length of the postexamination interview with Sergeant Gee. Defendant does not explain how establishing that the interview took two hours rather than the one hour that Sergeant Gee claimed had testified it took would have affected the outcome of the proceeding. Similarly, defendant claims that Sergeant Gee coordinated with Sergeant Foster regarding the polygraph questions that defendant was asked. Even assuming this is true, such coordination does not help establish either a *Miranda* or *Seibert* violation.

Defendant contends that Simon's questioning of Sergeant Foster was substandard because Sergeant Foster committed perjury during her testimony. The only known problem with Sergeant Foster's testimony was her apparently mistaken testimony that defendant drove himself to the Dearborn Police Department. This error was corrected with a stipulation that clarified Sergeant Foster actually drove defendant to the Dearborn Police Department.

Defendant argues that Simon's examination of Kinney was lacking in substance because he did not follow up on what defendant viewed as unsatisfactory answers by Kinney. Defendant does not explain what information he hoped Simon would elicit from Kinney, and instead, seems to be complaining that Simon did not question Kinney how defendant would have questioned Kinney. This may be true, but does not constitute ineffective assistance of counsel.

Defendant next argues that Simon was so ineffective that defendant ended up looking worse because of his testimony. Once again, defendant seems to be complaining that he was not questioned in the way he would have questioned himself. Again, while this may be true, it does not constitute ineffective assistance of counsel. *Rockey*, 237 Mich App at 76.

Finally, defendant argues that Simon's closing argument was inaccurate. For instance, Simon stated that the polygraph waiver of rights included postexamination questioning. However, this was a true statement because the form clearly states it includes postexamination questioning. And while Simon apparently misspoke and said Sergeant Foster, rather than Sergeant Gee, made promises of leniency, this error was not one that would have affected the outcome of the

proceeding. First, counsel's argument was not evidence and, second, the court had listened to the testimony presented at the hearing and knew it was Sergeant Gee who was accused of making a promise of leniency.

We conclude that defendant has not satisfied his dual burden of establishing that appellate counsel's performance during the *Ginther* hearing was deficient and that he was prejudiced.

Affirmed.

/s/ Anica Letica
/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher