PEOPLE v RODE

PEOPLE v GALLINA

Docket Nos. 125378, 125482. Submitted July 15, 1992, at Detroit.
Decided September 9, 1992, at 9:25 A.M. Leave to appeal sought.

Eric C. Rode, age sixteen, and Aldo S. Gallina, age fifteen, were
convicted by separate juries following a joint trial in the
Recorder's Court for the City of Detroit, Michael J. Talbot, J.,
of second-degree murder and possession of a firearm during the
commission of a felony. Each was sentenced to life imprison-
ment for the murder conviction and a mandatory two-year
consecutive term for the felony-firearm conviction. The defen-
dants appealed, and the appeals were consolidated.

The Court of Appeals *held:*

1. The trial court properly ruled that the defendants were
entitled to separate juries because each defendant intended to
present a case implicating the other defendant and exculpating
himself. However, the dual-trial procedure implemented did not
provide the defendants with the same required protections they
would have enjoyed in separate trials. Sufficient procedural
safeguards were not implemented to effectively protect each
jury from hearing the antagonistic defenses of the codefen-
dants. As a result, each defendant had to convince his jury that
not only did he not fire the fatal shot, but also that his
codefendant was the guilty party and was not to be believed.
With separate trials, each defendant would have had to con-

REFERENCES

Am Jur 2d, Evidence § 991; Juvenile Courts and Delinquent and
Dependent Children §§ 19-20, 50; Prosecuting Attorneys § 24;
Trial §§ 170-175.

Limitations on state prosecuting attorney's discretion to initiate
prosecution by indictment or by information. 44 ALR4th 401.

Propriety of multiple juries at joint trial of multiple defendants in
state criminal prosecution. 41 ALR4th 1189.

What constitutes such discriminatory prosecution or enforcement of
laws as to provide valid defense in state criminal proceedings. 95
ALR3d 280.

Antagonistic defenses as ground for separate trials of codefendants
in criminal case. 82 ALR3d 245.

vince his jury only that he was not guilty. The second-degree murder convictions must be reversed.

2. The prosecutor's policy of authorizing a complaint and warrant for all juveniles charged with first- or second-degree murder was proper pursuant to MCL 764.1f; MSA 28.860(6) and did not violate the defendants' due process rights.

3. The automatic-waiver statute, MCL 600.606; MSA 27A.606, gave the trial court jurisdiction over the murder charges. However, because felony-firearm was not one of the offenses enumerated in the statute, the prosecutor was obligated· to obtain a waiver of jurisdiction from the juvenile court of the felony-firearm charges in order to try the defendants as adults. No waiver was obtained, requiring vacation of the felony-firearm convictions.

4. The prosecution did not show good cause in moving to amend its witness list on the first day of trial to endorse each defendant as a witness in the codefendant's case. The court abused its discretion in granting the motion.

5. The court did not err in admitting into evidence the report of the medical examiner, which contained only observations, not conclusions and opinions. Recorded observations in an autopsy report are admissible under MRE 803(8)(B).

6. Although the police violated MCL 764.27; MSA 28.866 by failing to take Gallina immediately before the juvenile division of the probate court following his arrest, the statement he gave to the police during that time was voluntary under the totality of the circumstances. The court did not err in denying his motion to suppress the statement. ·

Reversed in part, vacated in part, and remanded.

1. CRIMINAL LAW — TRIAL — CODEFENDANTS — ANTAGONISTIC DEFEN-
   SES — JOINT TRIALS — SEPARATE JURIES.

   A defendant is entitled to a trial separate and apart from a codefendant who may testify to incriminate the defendant; the joint trial of such codefendants with separate juries is appropriate where each defendant is given the same protections and procedural safeguards that would be provided by a separate trial.

2. PROSECUTING ATTORNEYS — CHARGING DISCRETION — APPEAL AND
   ERROR.

   A prosecutor's exercise of charging discretion is an executive act, review of which is precluded absent unconstitutional, illegal, or ultra vires acts or an abuse of power.

3. CRIMINAL LAW — CIRCUIT COURTS — JURISDICTION — AUTOMATIC
    WAIVER — JUVENILES.

   Circuit court jurisdiction to try a juvenile without conducting a
   waiver hearing for certain felonies enumerated in the auto-
   matic-waiver statute does not include ancillary jurisdiction to
   try the juvenile for nonenumerated felonies (MCL 600.606;
   MSA 27A.606).

4. CRIMINAL LAW — EVIDENCE — HEARSAY EXCEPTION — PUBLIC
    RECORDS AND REPORTS.

   The recorded observations of a medical examiner contained in an
   autopsy report concerning a homicide victim may be admitted
   in the trial of the alleged assailant (MRE 803[8][B]).

5. CRIMINAL LAW — JUVENILE OFFENDERS — CONFESSIONS.

   The failure to take an arrested juvenile immediately before the
   juvenile division of the probate court does not per se require
   suppression of a statement made by the juvenile during the
   period of delay; the proper test is whether, under the totality of
   the circumstances, the statement was voluntary (MCL 764.27;
   MSA 28.886).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*Edick & Esper* (by *David J. Esper*), for Eric Rode.

*Peter Jon Van Hoek,* for Aldo Gallina.

Before: FITZGERALD, P.J., and HOOD and J. C. KINGSLEY,* JJ.

PER CURIAM. Defendants were tried together with separate juries. Both defendants were found guilty of second-degree murder, MCL 750.317; MSA 28.549, and possession of a firearm during

* Circuit judge, sitting on the Court of Appeals by assignment.

the commission of a felony, MCL 750.227b; MSA 28.424(2). Each defendant was sentenced to life imprisonment for the murder conviction and to a mandatory two-year consecutive term for the felony-firearm conviction. Defendants appeal as of right, raising several issues. We reverse in part, vacate in part, and remand for new and separate trials.

FACTS

On July 2, 1989, defendants were riding around in a Chevrolet Camaro with some high school friends. The Camaro was owned by defendant Gallina's cousin, Frank Kuhne. Defendant Gallina, age fifteen, was seated in the front passenger seat, and defendant Rode, age sixteen, was in the back seat on the passenger side. A Ford Mustang pulled beside the Camaro and the Mustang's occupants, Edward and Charles Schramek, indicated that they wanted to race. When the cars were side by side, Charles and the occupants of the Camaro began shouting at each other. Charles shouted, "You're lucky we don't pull our gun out and shoot you." At that point, defendant Gallina pulled a gun from the front panel of the car, where he knew his cousin kept it, and fired it out the window more than once. Defendant Rode then took the gun from defendant Gallina. Defendant Gallina testified that defendant Rode said, "If you are not going to shoot at them, I will." Defendant Rode fired the gun toward the tires of the Mustang.

Defendant Rode testified that after he shot toward the tires, he gave the gun back to defendant Gallina, who shot the gun again. Defendant Rode then reloaded the gun with bullets supplied by defendant Gallina. The Mustang continued to fol-

low the Camaro. The driver of the Camaro stopped the car suddenly, and, as the Mustang passed the driver's side of the Camaro, one of the defendants pulled himself up out of the passenger-side window and shot several times over the roof of the Camaro into the passenger side of the Mustang. Charles was killed by one of these shots.

Each defendant testified after the prosecutor rested. Each denied firing the gun over the roof as the Mustang passed the Camaro, and each claimed that the other defendant fired the gun. Jonathan Warmack, who was driving the Camaro, testified that defendant Gallina did not fire the gun when the Mustang was passing. Warmack also testified that after the Mustang passed by, defendant Rode said, "I know I hit him." Brad Andrews, who was in the back seat of the Camaro on the driver's side, made a statement to the police wherein he said that defendant Rode fired the gun over the roof as the Mustang was passing. At trial, Andrews testified that he did not see defendant Rode fire the gun as the Mustang passed, but he did see defendant Gallina reach out the window and fire the gun once the Mustang had passed. James Kelly, who was seated in the middle of the Camaro's back seat, testified that defendant Gallina fired the gun over the roof as the Mustang was passing, and then defendant Rode leaned out the window and fired the gun as the Mustang drove off.

I

Defendants each claim that he suffered substantial prejudice when the trial court, after ruling that antagonistic defenses necessitated a dual-jury trial, admitted evidence of antagonistic defenses before each jury. We agree.

A defendant is entitled to a trial separate and apart from a codefendant who it appears may testify to exculpate himself and incriminate the defendant. *People v Hurst,* 396 Mich 1, 4; 238 NW2d 6 (1976); *People v Hicks,* 185 Mich App 107, 117; 460 NW2d 569 (1990). When a court jointly tries two defendants who are accusing each other, the state is not allowed to pit one defendant against the other, with each trying to save himself to the detriment of the other. *Hurst, supra* at 9. This Court has approved the dual-jury procedure as a means of avoiding the problems arising from jointly trying defendants with antagonistic defenses. *People v Greenberg,* 176 Mich App 296, 304; 439 NW2d 336 (1989).

The use of separate juries is merely a partial form of severance and is to be evaluated under factors applicable to motions for separate trials. *People v Kramer,* 103 Mich App 747, 755; 303 NW2d 880 (1981). This Court must determine whether the dual-trial procedure provided defendants with the same protections they would have enjoyed through separate trials. *People v Brooks,* 92 Mich App 393, 395; 285 NW2d 307 (1979).

When dual trials are used to solve the problem of antagonistic defenses, both juries are generally present only during the time the prosecution introduces its evidence. 41 ALR4th 1191. In addition, the juries are generally impaneled separately, instructed separately, and deliberate and render verdicts separately. *Id.*

In this case, the trial court properly ruled that defendants were entitled to separate juries because each defendant would present a case implicating the other defendant and exculpating himself. However, we conclude that the dual-trial procedure did not provide defendants with the same protections they would have enjoyed through separate trials.

On the first day of trial, before jury selection, the prosecutor moved to amend his witness list to include defendants in the event they waived their Fifth Amendment rights and elected to testify.[1] If defendants chose to testify, the prosecutor intended to reopen his proofs so each defendant's testimony could be heard by the other defendant's jury. Each defendant objected, because he did not want his jury to hear the antagonistic testimony from the other defendant. Over these objections, the trial court permitted each jury to hear the antagonistic testimony of the codefendant once he elected to testify in his own case.

Over defendants' objections, the trial court also allowed the two juries to be picked from the same venire and to be present during the voir dire of the other defendant's jury.[2] In addition, the trial court denied each defendant's request to remove his jury when codefendant's counsel was about to cross-examine a witness and elicit implicating testimony.

Had separate trials been granted, the juries would not have heard the voir dire regarding the inconsistent theories for the codefendant's jury, the cross-examination of each witness by the codefendant's counsel, and the testimony of the codefendant. Consequently, sufficient procedural safeguards were not implemented to effectively protect each jury from hearing the antagonistic defense of the codefendant. The juries knew that only one defendant had fired the fatal shot and that each defendant claimed the other had done it. Each defendant therefore had to convince his jury not only that he did not fire the fatal shot, but that

[1] The prosecutor acknowledged that he could not call defendants to testify during his case in chief.

[2] During voir dire, inconsistent theories were presented to the juries.

the other defendant was the guilty party and was not to be believed. With separate trials, each defendant would only have had to convince his jury that he was not guilty.

II

Defendants also claim that the prosecutor's decision to charge them by complaint and warrant constituted an abuse of discretion and violated their right to due process of law. We disagree.

MCL 764.1f; MSA 28.860(6) authorizes a prosecutor to file a complaint and warrant against a juvenile if the prosecutor has reason to believe that a juvenile fifteen years of age and less than seventeen years of age has violated certain statutory provisions, including first-degree murder.[3] MCL 600.606; MSA 27A.606 gives a circuit court jurisdiction to hear and determine cases involving such juveniles who are charged with these offenses. If the prosecution files a petition in juvenile court instead of authorizing a complaint and warrant for these nine enumerated offenses, the juvenile court then has jurisdiction. MCL 712A.2; MSA 27.3178(598.2).

In this case, each defendant was charged with first-degree murder and felony-firearm. Pursuant to the prosecutor's policy, a complaint and warrant for each defendant was filed. All parties agree that MCL 764.1f; MSA 28.860(6) gives the prosecu-

---

[3] The statutes are MCL 750.83; MSA 28.278 (assault with intent to commit murder), MCL 750.89; MSA 28.284 (assault with intent to rob while armed), MCL 750.91; MSA 28.286 (attempted murder), MCL 750.316; MSA 28.548 (first-degree murder), MCL 750.317; MSA 28.549 (second-degree murder), MCL 750.520b; MSA 28.788(2) (first-degree criminal sexual conduct), MCL 750.529; MSA 28.797 (armed robbery), MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) (manufacture or possession with intent to deliver over 650 grams of heroin or cocaine), and MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i) (possession of more than 650 grams of heroin or cocaine).

tion discretion to file a complaint and warrant in this case. However, defendants claim that the prosecutor abused his discretion and denied defendants due process by implementing a uniform policy for all fifteen- to seventeen-year-old defendants who are charged with first- or second-degree murder.

A prosecutor has broad discretion in determining which charges to bring and when to bring them, and the judiciary is not to usurp that authority. *People v Farmer,* 193 Mich App 400, 402; 484 NW2d 407 (1992). Because the conduct of a prosecutor is an executive act, review of a prosecutor's exercise of charging discretion is generally precluded by the constitutional separation of powers absent unconstitutional, illegal, or ultra vires acts or an abuse of power. *People v Jackson,* 192 Mich App 10, 15; 480 NW2d 283 (1991).

In this case, the prosecutor's policy to authorize a complaint and warrant for all juveniles charged with first- or second-degree murder is within the statutory bounds of the law. Defendants have cited no authority in support of their position that there was an abuse of power or a violation of due process as a result of the policy, and our research has found no such cases.[4]

III

Next, both defendants claim that, because felony-firearm, MCL 750.227b; MSA 28.424(2), is not a violation enumerated in MCL 600.606; MSA 27A.606, the automatic waiver of the probate court's jurisdiction with regard to that charge was

---

[4] To the contrary, in *People v Newcomb,* 190 Mich App 424; 476 NW2d 749 (1991), and *People v Sunday,* 183 Mich App 504; 455 NW2d 321 (1990), this Court determined that the prosecutor's policy to charge all alleged repeat felons as habitual offenders did not constitute malfeasance or a constitutional violation.

invalid and the circuit court had no jurisdiction over defendants with 'regard to the charge. We agree. Although the automatic-waiver statute gave the trial court jurisdiction over the murder charges, it did not give the court jurisdiction over the felony-firearm charges. Rather, the prosecutor was obligated to obtain from the juvenile court a waiver of jurisdiction over the felony-firearm charge to also try defendants as adults on that charge. *People v Deans,* 192 Mich App 327; 480 NW2d 334 (1991). Accordingly, defendants' convictions of this charge must be vacated. The prosecutor may, of course, reinstitute charges regarding this offense, either charging defendants as juveniles or seeking a waiver of juvenile court jurisdiction.

IV

Defendant Rode contends that the trial court erred in permitting the prosecution to amend its witness list on the first day of trial to endorse each defendant as a witness in the codefendant's case. The prosecutor did not explain why defendants were not added to the witness list at an earlier time. In allowing the amendment, the trial court stated that defendants' preparation for trial was not affected "because they already knew what the other was going to argue at trial."

MCL 767.40a(3); MSA 28.980(1)(3) requires the prosecutor to send to the defendants, not less than thirty days before trial, a list of the witnesses the prosecutor intends to produce at trial. MCL 767.40a(4); MSA 28.980(1)(4) allows a prosecutor to add or delete from the witness list at any time upon leave of the court and for good cause shown or by stipulation of the parties. Noncompliance with § 40a does not require automatic dismissal;

rather, the trial court must exercise discretion in fashioning a remedy for noncompliance with a discovery statute. *People v Williams*, 188 Mich App 54, 58-59; 469 NW2d 4 (1991). An abuse of discretion can be found where the defendant is able to show prejudice as a result of the failure to produce a witness or as a result of amendment of the witness list.

In this case, the prosecutor did not show good cause to justify his motion for the late addition. In light of the trial court's acknowledgment that defendants intended to present antagonistic defenses, defendants expected that their juries would not hear evidence presented during the codefendant's case. As a result of the trial court's ruling, defendants were forced to significantly change their strategy.

V

Defendant Rode next asserts that the trial court erred in admitting into evidence the report of medical examiner Dr. Chung regarding the victim because it contained "opinions and conclusions." We disagree. The chief medical examiner, Dr. Cassin, utilized the autopsy report to explain Dr. Chung's observations regarding the gunshot wound and the path of the bullet. The statements contained in the autopsy report did not constitute conclusions and opinions but, rather, observations. Cf. *People v Shipp*, 175 Mich App 332; 437 NW2d 385 (1989).[5] Recorded observations in an autopsy report are admissible under MRE 803(8)(B).

[5] In *Shipp,* a physician witness, who lacked personal knowledge, read into evidence an autopsy report that contained not only the recorded observations of the victim's body, but also another physician's opinion and conclusions about what caused the death. Unlike in this case, the cause of death was an issue in that case.

VI

Defendant Gallina asserts his out-of-court statement should have been suppressed because he was not taken immediately before the juvenile court upon his arrest as required by MCL 764.27; MSA 28.886. We disagree.

Failure to take a juvenile defendant immediately before the juvenile division of the probate court does not per se require suppression of a statement made by the defendant during the period of delay. *People v Good*, 186 Mich App 180, 188; 463 NW2d 213 (1990). The proper test to be applied to determine whether a juvenile's confession is admissible is whether, under the totality of the circumstances, the defendant's statement was voluntarily made. *Id.* Appropriate considerations include

> (1) whether the requirements of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), have been met and the defendant clearly understands and waives those rights, (2) the degree of police compliance with MCL 764.27; MSA 28.866 and the juvenile court rules, (3) the presence of an adult parent, custodian or guardian, and (4) the juvenile defendant's personal background.
>
> In addition, the court must consider (1) the accused's age, educational and intelligence level, and the extent of the accused's prior experience with the police, (2) the length of detention before the statement was made, (3) the repeated and prolonged nature of the questioning, and (4) whether the accused was injured, intoxicated, in ill health, physically abused or threatened with abuse, or deprived of food, sleep or medical attention. [*Id.* at 189. Citations omitted.]

In this case, defendant Gallina was taken to the police station with his mother at 7:45 A.M. He was

advised of his *Miranda* rights and proceeded to give a statement that was reduced to writing and signed by both him and his mother. Although the police violated MCL 764.27; MSA 28.886, it is apparent, under the totality of the circumstances, that Gallina voluntarily made the statement and that the trial court did not clearly err in denying his motion to suppress.

## VII

In light of our conclusion that defendants are entitled to a new trial, we need not address those issues that are unique to the first trial.[6]

Reversed in part, vacated in part, and remanded.

---

[6] Defendant Rode raised an issue regarding jury instructions, and both defendants raised sentencing issues. We assume the case will be assigned to a different judge because Judge Talbot is no longer a Recorder's Court judge.