*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JAMES ANTHONY WEBB,

       Defendant-Appellant.

UNPUBLISHED
April 23, 2019

No. 340907
Wayne Circuit Court
LC No. 17-003320-01-FH

Before: MARKEY, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of forgery of a document involving real property, MCL 750.248b(1), obtaining money of $1,000 or more but less than $20,000 by false pretenses, MCL 750.218(4)(a), and encumbering real property without lawful cause, MCL 600.2907a(2). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 24 months to 14 years' imprisonment for the forgery conviction, 12 months to 5 years' imprisonment for the false pretenses conviction, and 120 days in jail for the encumbering real property conviction, with credit for time served. We affirm, but remand for the ministerial purpose of correcting a clerical error in defendant's judgment of sentence.[1]

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant's convictions arise from an elaborate real estate scheme in which he persuaded individuals to pay him sums of money to pay delinquent property taxes on homes in Detroit, in exchange for which defendant promised to assist them in securing title to the homes, even though

---

[1] The judgment of sentence inaccurately reflects that defendant was convicted of obtaining money of $100,000 or more by false pretenses, contrary to MCL 750.218(7)(a). We remand for correction of this error to accurately reflect defendant's conviction of obtaining money of $1,000 or more but less than $20,000 by false pretenses, contrary to MCL 750.218(4)(a). *People v Avant*, 235 Mich App 499, 521-522; 597 NW2d 864 (1999).

he did not have any property interest in the parcels. After employees at the Wayne County Register of Deeds became aware of defendant's actions, a criminal undercover investigation was conducted and defendant was eventually arrested after engaging in a property transaction with an undercover police officer. At trial, witness Kelvyna Edwards testified that she entered into an agreement with defendant whereby he agreed to assist her in purchasing a home located at 19900 Monte Vista (the Monte Vista property) in Detroit if she paid the delinquent taxes on the property. After Edwards paid defendant $600, she signed an affidavit ("the Edwards affidavit") reflecting her purported legal interest in the Monte Vista property, which defendant recorded with the Wayne County Register of Deeds. The transaction with the undercover officer involved the same parcel of property.

## II. LATE ENDORSEMENT OF PROSECUTION WITNESSES

Defendant first argues that the trial court abused its discretion by allowing the prosecution to call four witnesses at trial who were not endorsed on its witness list. We disagree.

We review for an abuse of discretion the trial court's ruling in response to the prosecution's request to amend its witness list. *People v Burwick*, 450 Mich 281, 291; 537 NW2d 813 (1995); *People v Everett*, 318 Mich App 511, 516; 899 NW2d 94 (2017). The trial court abuses its discretion when its decision is outside the range of "reasonable and principled outcomes." *Id.* (citation and quotation marks omitted).

MCL 767.40a provides, in pertinent part:

> (1) The prosecuting attorney shall attach to the filed information a list of all witnesses known to the prosecuting attorney who might be called at trial and all res gestae witnesses known to the prosecuting attorney or investigating law enforcement officers.

> (2) The prosecuting attorney shall be under a continuing duty to disclose the names of any further res gestae witnesses as they become known.

> (3) *Not less than 30 days before the trial, the prosecuting attorney shall send to the defendant or his or her attorney a list of the witnesses the prosecuting attorney intends to produce at trial.*

> (4) *The prosecuting attorney may add or delete from the list of witnesses he or she intends to call at trial at any time upon leave of the court and for good cause shown or by stipulation of the parties.* [Emphasis added.]

The purpose of MCL 767.40a is "to provide notice to the accused of potential witnesses." *Everett*, 318 Mich App at 518. In *Everett*, this Court recognized that by endorsing the witnesses that it plans to call at trial, the prosecution puts the defendant on notice of its "defined plan of action," moving beyond mere disclosure of res gestae and known witnesses. *Id.* at 521. The prosecution will then bear the burden of producing that witness for trial. *Id.* However, as MCL 767.40a(4) provides, the prosecution may obtain leave of the court to amend its witness list "at any time" after demonstrating "good cause[.]" *Burwick*, 450 Mich at 292. The court also has discretion to tailor a remedy to address the prosecution's failure to comply with MCL 767.40a.

-2-

*People v Duenaz*, 306 Mich App 85, 103; 854 NW2d 531 (2014). Where the prosecution fails to comply with MCL 767.40a, reversal is not warranted unless the defendant demonstrates that he was prejudiced by the prosecution's noncompliance. *Duenaz*, 306 Mich App at 104.

On the second day of trial, the prosecutor sought leave from the court to call as witnesses at trial Edwards, Marchelle Freeman, Ian L. Gross, and Sergeant Donald Farris. The prosecutor explained that the witnesses were not endorsed on its original witness list because of scheduling and transportation issues. The prosecutor also informed the court that he had verbally informed defense counsel before trial of the names of the witnesses to be called at trial, and at the trial court's request, provided a summary of each witness's anticipated testimony.

First, the trial court did not abuse its discretion by finding that the prosecution demonstrated "good cause" to amend its witness list and call the four witnesses at trial. The prosecution's noncompliance with MCL 767.40a resulted from what the trial court characterized as a "mistake." This Court has recognized that inadvertence on the part of the prosecution can satisfy the requirement of "good cause[.]" MCL 767.40a(4). In *People v Callon*, 256 Mich App 312, 325; 662 NW2d 501 (2003), the trial court allowed the prosecution to amend its witness list when opening statements were given. This Court affirmed the trial court's decision because the witness, a state police laboratory technician who had tested the defendant's blood, "was known to the defense, had been subjected to cross-examination at the preliminary examination," defense counsel did not request a continuance, and the defendant did not incur undue prejudice. *Id*. at 326. The trial court also observed that the witness's identity was disclosed by way of a toxicology report tendered to the defense, and that the substance of her testimony was gleaned from her direct testimony and cross-examination at the preliminary examination. *Id*. at 327. This Court concluded that "good cause" to allow the prosecution to amend its witness list existed where the prosecution's noncompliance with MCL 767.40a resulted from "inadvertence" and because "[m]ere negligence of the prosecutor is not the type of egregious case for which the extreme sanction of precluding relevant evidence is reserved." *Id*. at 327-328.

Similarly, in *People v Herndon*, 246 Mich App 371, 402-403; 633 NW2d 376 (2001), this Court affirmed the trial court's conclusion that the prosecution had established "good cause" for the late endorsement of a witness, given that a witness who the prosecution had originally planned to call was not able to provide the expected testimony. This Court noted that the defense had not requested a continuance, defense counsel was "evidently satisfied" with the opportunity to speak with the new witness before he testified, and that "[w]hile the source of the testimony may have been a surprise, the contents were not." *Id*. at 403. In the present case, the trial court found that the prosecution's articulated reasons for the late endorsement of the four witnesses stemmed from its own inadvertence and mistake, but were related to its attempts to navigate transportation and scheduling matters with the witnesses. The court did not abuse its discretion by finding that the prosecution satisfied the "good cause" requirement of MCL 767.40a(4). See also *People v Kulick*, 209 Mich App 258, 265; 530 NW2d 163 (1995), remanded on other grounds 449 Mich 851 (1995) (where the prosecution sought leave to allow a witness to testify on rebuttal to refute evidence from the defense, this amounted to "good cause" as contemplated by MCL 767.40a(4)).

Furthermore, defendant has not demonstrated that he was prejudiced by the late endorsement. We note that all four witnesses were included on the prosecution's amended

witness list, filed on July 10, 2017, although they were not endorsed. With regard to Edwards and Sergeant Farris, while not endorsed, their names were also included on the prosecution's witness list, dated June 23, 2017. Moreover, Sergeant Farris testified regarding defendant's receipt of a $500 deposit from Detective Little and his cashing of the cashier's check, a copy of the cashier's check was admitted at the preliminary examination, and Detective Little testified at the preliminary examination that she gave defendant the check. Additionally, as the prosecutor noted, the January 30, 2013 quitclaim deed conveying the Monte Vista property from Exit Strategy December 12, LLC, to Investus Exit Strategy (Michigan), LLC, was admitted into evidence at the preliminary examination and Alexandria Casperson offered testimony at the preliminary examination concerning the last owner of record of the Monte Vista property. The Edwards affidavit was also admitted at the preliminary examination, Casperson testified regarding the nature of the affidavit, and Detective Little also testified regarding the substance of the affidavit and how it was almost identical to the affidavit that defendant prepared for her to sign. Just as Gross and Freeman were called to testify at trial regarding the true owner of the Monte Vista property, Edwards was called to testify concerning her execution of the affidavit and her interactions with defendant, and Sergeant Farris testified regarding the payment made to defendant during the undercover investigation. Defense counsel, by virtue of the evidence adduced at the preliminary examination, was aware of the nature of this testimony, and while the sources of the testimony may not have been entirely expected, the underlying substance of the testimony was not a surprise. *Herndon*, 246 Mich App at 403.

The trial court also made sure that defendant, having been apprised of the additional witnesses' anticipated testimony, would have three days, two of which straddled the weekend, to prepare for cross-examination of the witnesses. Although defendant suggests that the trial court should have allowed him to give an additional opening statement and to reopen jury voir dire, defense counsel did not request either remedy in the trial court, or ask for a continuance. We note that the prosecution did not mention the potential testimony of the witnesses during his opening statement. Moreover, in his opening statement, defense counsel focused on explaining the concept of reasonable doubt, claimed that defendant had been entrapped, and explained that defendant's activities were lawful. In closing argument, defense counsel again focused on the concept of reasonable doubt, discussed how defendant had offered to give Edwards her money back, stated that defendant was targeted by officials at Wayne County who did not want him assisting people with buying properties in the county, and further claimed that defendant's recording of the Edwards affidavit was lawful. The record reveals that the addition of the four witnesses did not require defendant to alter his trial strategy. Cf. *People v Rode*, 196 Mich App 58, 68; 492 NW2d 483 (1992), rev'd on other grounds *People v Hana*, 447 Mich 325 (1994) (the trial court abused its discretion by allowing the late endorsement of a witness on the first day of trial where the late endorsement caused the defendants to "significantly alter" their trial strategy).

In sum, under the circumstances, we are not persuaded that the trial court abused its discretion by allowing the prosecution's late endorsement of the four witnesses.

### III. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the prosecution failed to present sufficient evidence to support his conviction of forgery of a document involving real property. We disagree.

-4-

In *People v James*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 339504); slip op at 3, this Court set forth the applicable standard of review when a defendant challenges the sufficiency of the evidence supporting his conviction:

> On appeal, a claim of insufficient evidence is reviewed de novo. This Court reviews the evidence in the light most favorable to the prosecution and determines whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences. This Court will not interfere with the jury's role of determining the weight of the evidence or deciding the credibility of the witnesses. [Citations and quotation marks omitted.]

Defendant was convicted of forgery of a document involving real property, contrary to MCL 750.248b, which provides, in pertinent part:

> (1) A person who falsely makes, alters, forges, or counterfeits a deed, a discharge of mortgage, or a power or letter of attorney or other document that affects an interest in real property with intent to injure or defraud another person is guilty of a felony punishable by imprisonment for not more than 14 years.

In *People v Johnson-El*, 299 Mich App 648, 651; 831 NW2d 478 (2013), this Court set forth the elements of forgery as follows:

> "The elements of the crime of forgery are: (1) an act which results in the false making or alteration of an instrument (which makes an instrument appear to be what it is not); and (2) a concurrent intent to defraud or injure. The key is that the writing itself is a lie." *People v Grable*, 95 Mich App 20, 24; 289 NW2d 871 (1980), citing *People v Susalla*, 392 Mich 387; 392-393, 220 NW2d 405 (1974).

Defendant contends that the Edwards affidavit is not anything but what it really is, a document expressing an interest in real property, and therefore, the prosecution did not establish that he was guilty of forgery of a document involving real property. After reviewing the Edwards affidavit and other evidence presented at trial, we disagree. The underlying purpose of the Edwards affidavit, as evidenced by the language of the affidavit, was to notify other holders of interests in the Monte Vista property that the person signing the affidavit, Edwards, has a legal interest in the Monte Vista property. The foundation of Edwards's purported interest in the Monte Vista property, as set forth in the affidavit that defendant drafted, is the reliance on MCL 211.962, cited in the affidavit, and an accompanying statute that is not expressly identified in the affidavit, MCL 211.963.

MCL 211.962, which is part of the Certification of Abandoned Property for Accelerated Forfeiture Act (the Accelerated Forfeiture Act), MCL 211.961 *et seq*., provides, in pertinent part:

> As used in this act:

(a) "Abandoned property" means tax delinquent property containing a structure that is vacant or dilapidated, is open to entrance or trespass, and has been determined to be abandoned under [MCL 211.964].

MCL 211.964(1) specifies that under circumstances in which a local unit of government declares "an accelerated forfeiture of abandoned property" before October 1 of any tax year, "the local unit of government may identify property within the local unit of government as abandoned property," provided that the local unit of government complies with statutory requirements not at issue in this appeal. MCL 211.962(f) defines a "[l]ocal unit of government" as "a city, village or township." Additionally, MCL 211.963 provides:

A local unit of government may make a declaration of accelerated forfeiture of abandoned property by adopting a resolution at a meeting held pursuant to the open meetings act, 1976 PA 267, MCL 15.261 to 15.275, containing substantially the following language:

"Whereas, the governing body of the local unit of government determines that parcels of abandoned tax delinquent property exist;

Whereas, abandoned tax delinquent property contributes to crime, blight, and decay within the local unit of government;

Whereas, the certification of tax delinquent abandoned property as certified abandoned property will result in the accelerated forfeiture and foreclosure of certified abandoned property under the general property tax act and return abandoned property to productive use more rapidly, thereby reducing crime, blight, and decay within the local unit of government;

Therefore, the local unit of government hereby notifies residents and owners of property within the local unit of government that abandoned tax delinquent property will be identified and inspected and may be certified as certified abandoned property under the certification of abandoned property for accelerated forfeiture act and subject to accelerated forfeiture and foreclosure under the general property tax act."

The record reflects that the Monte Vista property was indeed vacant, and there was also some indication in the record that the property had delinquent property taxes at one point during the relevant time period. However, both Freeman and Gross denied that their client had received prior notice from Edwards or defendant, aside from the recording of the Edwards affidavit, with regard to Edwards's purported legal interest in the Monte Vista property. More importantly, the entire foundation of Edwards's purported legal interest in the Monte Vista property as set forth in the Edwards affidavit, to the extent that the affidavit reflected that a quiet-title action would be pursued on that basis, was that the property constituted "abandoned property" as set forth in MCL 211.962. However, as the relevant statutes make clear, only a local unit of government, after meeting strict statutory requirements, may certify a property as abandoned. MCL 211.964(1)(a) - (d). Accordingly, the entire basis for the Edwards affidavit claiming a legal interest in the Monte Vista property was false, fraudulent, and not supported by Michigan law.

Under such circumstances, the evidence supported the jury's conclusion that the Edwards affidavit was a false instrument. *Johnson-El*, 299 Mich App at 652.

The present case is therefore similar to *Johnson-El*. In that case, the defendant maintained that he owned the real property at issue and that he had secured a billion dollar bond with respect to the property. *Id*. In his testimony at trial, however, the defendant conceded that he had not purchased the property and had not been conveyed title to the property from a previous owner. *Id*. The defendant in *Johnson-El* had recorded an "Affidavit of Allodial Title" claiming an interest in the subject property, which he alleged derived from his status as a "Washitaw Moor," a group believing that all land outside the original 13 colonies and the state of Texas belongs to them. *Id*. at 650. In considering whether the record supported a finding that the defendant possessed an intent to deceive, this Court recognized that the defendant's "only claim to the property is by virtue of his proclaimed Washitaw citizenship" and concluded that "[c]laiming to be a citizen of a fictional sovereign does not bestow upon [the] defendant any legitimate right to real property situated in this state." *Id*. at 653. Because the record in *Johnson-El* confirmed that the defendant had engaged in a scheme of locating properties that creditors were seeking to foreclose on, this Court concluded that the evidence demonstrated that the defendant was aware that he did not possess a legal right to the property and had fraudulently filed the affidavit at issue. *Id*.

Likewise, in the instant case, the evidence indicates that defendant prepared an affidavit for Edwards to sign, basing her purported interest in the Monte Vista property on a statute that afforded her no legal interest in real property. While the facts in this case are different from those in *Johnson-El*, the underlying factual premise of both cases is similar, given that the defendant in *Johnson-El* and defendant in this case prepared legal instruments reciting a legal property interest that did not exist, and recorded those instruments against the property's chain of title, with the intention to defraud others. Accordingly, we reject defendant's contention that there was insufficient evidence to support his conviction of forgery of a document involving real property.

## IV.  DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4.

### A.  MOTION TO QUASH THE AMENDED INFORMATION

Defendant next argues that the trial court erred by denying his motion to quash the amended information. We disagree.

In *People v Waltonen*, 272 Mich App 678, 683-684; 728 NW2d 881 (2007), this Court recited the standards of review regarding motions to quash, as well as the relevant legal principles with respect to preliminary examinations, as follows:

> A circuit court's ruling regarding a motion to quash an information and the district court's decision to bind over a defendant are reviewed to determine whether the district court abused its discretion in making its decision. *People v Hotrum*, 244 Mich App 189, 191; 624 NW2d 469 (2000); *People v Riggs*, 237

Mich App 584, 587, 604 NW2d 68 (2000); *People v Hamblin*, 224 Mich App 87, 91; 568 NW2d 339 (1997). However, where the decision entails a question of statutory interpretation, i.e., whether the alleged conduct falls within the scope of a penal statute, the issue is a question of law that we review de novo. *People v Stone*, 463 Mich 558, 561; 621 NW2d 702 (2001); *Hotrum, supra* at 191; *Riggs, supra* at 587-588.

The primary function of a preliminary examination is to determine whether a felony has been committed and, if so, whether there exists probable cause to believe that the defendant committed the felony. *People v Yost*, 468 Mich 122, 125-126; 659 NW2d 604 (2003), citing MCL 766.13. Probable cause requires evidence sufficient to make a person of ordinary caution and prudence to conscientiously entertain a reasonable belief of the defendant's guilt. *Yost, supra* at 126. The magistrate, however, need not be without doubts regarding guilt. *Id*. Following the conclusion of the preliminary examination, if it appears to the district court that there is probable cause to believe that a felony was committed and that the defendant committed it, the court must bind the defendant over for trial. MCL 766.13; MCR 6.110(E).

A trial court abuses its discretion when its decision is outside the range of "reasonable and principled outcomes." *Everett*, 318 Mich App at 516 (citation and quotation marks omitted).

In his Standard 4 brief, defendant makes a cursory assertion that "the [p]rosecution failed to establish sufficient evidence that the offense charged has been committed" and that the elements of the crime of forgery were somehow not established at the preliminary examination, resulting in a lack of evidence to meet the probable cause standard. Defendant also asserts that the district court did not actually review the Edwards affidavit at the preliminary examination.

First, the evidence at the preliminary examination amply supported the district court's determination that probable cause existed to believe that defendant committed the offense of forgery of a document involving real property in violation of MCL 750.248b(1). Specifically, the evidence established that defendant prepared the Edwards affidavit, which reflected that the Monte Vista property was abandoned property as defined by MCL 211.962(a), and that Edwards would be occupying the Monte Vista property with the intention of quieting title in her favor pursuant to a property interest acquired through the Accelerated Forfeiture Act. Detective Little also testified at the preliminary examination that she and defendant negotiated for her to acquire the Monte Vista property through the same process, whereby she would pay back taxes on the property in exchange for an interest in the property, and that defendant prepared an affidavit almost identical to the Edwards affidavit. Similarly, Casperson testified that Investus Exit Strategy (Michigan), LLC, was the owner of record for the Monte Vista property. The evidence at the preliminary examination supports the district court's determination that the instruments involving real property that defendant prepared were indeed false. See *Johnson-El*, 299 Mich App at 651, 652-653.

Moreover, the record does not support defendant's contention that the district court did not actually consider the Edwards affidavit. During the preliminary examination, both the Edwards affidavit and the affidavit that defendant prepared for Detective Little were admitted

into evidence. In its decision from the bench, the district court stated that it had reviewed and considered the documentation entered into evidence. Casperson also clearly testified that Investus Exit Strategy (Michigan), LLC, was the last party to hold title to the Monte Vista property, and no subsequent documents had been recorded reflecting a conveyance of title to a third party. Contrary to defendant's argument on appeal, there is no indication in the record that the district court did not review the Edwards affidavit, or consider whether it properly reflected a legitimate interest on behalf of Edwards in the Monte Vista property.

B. MOTION TO COMPEL DISCOVERY AND CONFRONTATION CLAUSE VIOLATION

Defendant next argues that the trial court abused its discretion by denying his motion to compel discovery and also violated his constitutional right to confront the witnesses against him by admitting evidence of additional complaints against him without an opportunity to confront the additional complainants. We disagree.

"This Court reviews a trial court's decision regarding a discovery violation for an abuse of discretion." *People v Bosca*, 310 Mich App 1, 26; 871 NW2d 307 (2015); MCR 6.201(J). "To obtain relief for a discovery violation, the defendant must establish" that he was prejudiced. *People v Dickinson*, 321 Mich App 1, 17-18; 909 NW2d 24 (2017). This Court reviews constitutional issues de novo. *People v Akins*, 259 Mich App 545, 555; 675 NW2d 863 (2003).

As this Court observed in *Dickinson*, an accused does not have a constitutional right to discovery in a criminal case. *Dickinson*, 321 Mich App at 18. In contrast to the rules of civil litigation, which allow for "far-reaching discovery" that is limited only by relevancy of the information requested and whether it is likely to lead to the discovery of admissible evidence, the discovery process in criminal cases is governed by more strict rules set forth in MCR 6.201. *People v Greenfield* (*On Reconsideration*), 271 Mich App 442, 447; 722 NW2d 254 (2006). Notably, "either the subject of the discovery must be set forth in the [court] rule or the party seeking discovery must show good cause why the trial court should order the requested discovery." *Id*. at 448. If the party requesting the discovery cannot make such a showing, a trial court is simply without authority to order the requested discovery in a criminal case. *Id*.

Defendant filed a motion to compel discovery, requesting that the prosecution produce all evidence relating to additional complaints against him with regard to his alleged fraudulent property scheme. At a hearing on defendant's motion, the prosecutor informed the trial court that defendant was being investigated in another case that involved 28 complainants and 35 additional properties. The prosecutor expected that related charges would be brought in the next two weeks, and he had invited defense counsel "to review those files [at the prosecutor's office], if he so pleases." However, the prosecutor informed the court that he had no intention of calling any of the 28 other complainants to testify in the instant case, and therefore argued that the requested discovery was not relevant to the instant case.

Because the prosecution did not intend to call other individuals who had lodged complaints against defendant in this case, the requested information was not within the scope of MCR 6.201(A), which requires mandatory disclosure of the following:

(1) the names and addresses of all lay and expert witnesses whom the party may call at trial; in the alternative, a party may provide the name of the witness and make the witness available to the other party for interview; the witness list may be amended without leave of the court no later than 28 days before trial;

(2) any written or recorded statement, including electronically recorded statements, pertaining to the case by a lay witness whom the party may call at trial, except that a defendant is not obliged to provide the defendant's own statement;

(3) the curriculum vitae of an expert the party may call at trial and either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion;

(4) any criminal record that the party may use at trial to impeach a witness;

(5) a description or list of criminal convictions, known to the defense attorney or prosecuting attorney, of any witness whom the party may call at trial; and

(6) a description of and an opportunity to inspect any tangible physical evidence that the party may introduce at trial, including any document, photograph, or other paper, with copies to be provided on request. A party may request a hearing regarding any question of costs of reproduction, including the cost of providing copies of electronically recorded statements. On good cause shown, the court may order that a party be given the opportunity to test without destruction any tangible physical evidence.

Defendant's implied argument that he was denied the opportunity to prepare his defense because the evidence regarding other complaints against him was not provided during discovery is not persuasive, particularly where defense counsel had the opportunity to visit the prosecutor's office to review the additional complaints. Likewise, aside from defendant's unsupported allegation, without citation to legal authority, that a "causal relationship" existed between the complaints that Casperson and Detective Claudia Barden-Jackson received about defendant and this case, defendant has not established that "good cause" existed to modify the requirements of MCR 6.201.[2] In *Greenfield* (*On Reconsideration*), 271 Mich App at 451, this Court recognized that the prosecution in that case did not violate MCR 6.201 because the requested evidence, a booking room videotape, did not fall within the scope of MCR 6.201(A) or (B). This Court also held that "the failure to produce evidence that does not fall within any category of discoverable

---

[2] MCR 6.201(I) provides that "[o]n good cause shown, the court may order a modification of the requirements and prohibitions of this rule."

evidence does not constitute good cause to support a discovery order." *Id*. In the present case, defendant has not cited any legal authority for the proposition that evidence that bears a "causal" relation to evidence presented at trial is discoverable as meeting the "good cause" requirement of MCR 6.201(I). Accordingly, because the evidence of additional complaints against defendant did not meet the requirements of MCR 6.201 and "good cause" did not exist to warrant "modification of the requirements and prohibitions of" the court rule, the trial court did not abuse its discretion by denying defendant's motion to compel discovery.

Defendant also claims that his constitutional right to confront the witnesses against him was violated because the trial court allowed the prosecution to introduce evidence relating to additional complaints against him with respect to his property scheme and he did not have the opportunity to cross-examine these other witnesses. We disagree.

A fundamental interest that the Confrontation Clause, US Const, Am VI, protects is the right of a defendant to cross-examine the witnesses against him. *People v Bruner*, 501 Mich 220, 227; 912 NW2d 514 (2018); *People v Wood*, ___ Mich App ___, ___; ____ NW2d ___ (2018) (Docket No. 342424), lv pending; slip op at 14. However, the right only impacts "testimonial" evidence, given that the Confrontation Clause applies to the witnesses that testify against the defendant. *Bruner*, 501 Mich at 227. "Testimony" is "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id*., quoting *Crawford v Washington*, 541 US 36, 51; 124 S Ct 1354; 158 L Ed 2d 177 (2004) (quotation marks and citation omitted in original). The United States Supreme Court has recognized that the "primary purpose" of the statement must be testimonial. *Ohio v Clark*, ___ US ___, ___; 135 S Ct 2173, 2181; 192 L Ed 2d 306 (2015). Put another way, the pivotal question is whether "in light of all the circumstances, viewed objectively, the "primary purpose" of the communication was to create an out-of-court substitute for trial testimony." *Id*., 135 S Ct at 2180 (citation and quotation marks omitted).

Importantly, the Confrontation Clause does not preclude the admission of "out-of-court testimonial statements for purposes other than establishing the truth of the matter asserted." *People v Putman*, 309 Mich App 240, 246; 870 NW2d 593 (2015). For example, evidence that is introduced to explain the impact of a statement on the person who heard the statement will not implicate the Confrontation Clause. *Id*. Thus, a statement introduced at trial to show why police officers acted in the manner that they did during the course of an investigation is not hearsay and will not violate the Confrontation Clause. *Id*. In *Putman*, a police officer testified regarding a tip that he received, during the course of a criminal investigation, regarding the name and address of an individual who allegedly shot the victim. *Id*. The police officer used this information to undertake additional investigation and found that the defendant in *Putman* met the description that the informant provided. *Id*. at 246-247. This Court affirmed the trial court's admission of the evidence, holding that "[b]ecause the Confrontation Clause does not prevent the use of out-of-court testimonial statements to show why a police officer acted as he did, the admission of this testimony did not violate [the] defendant's right of confrontation[.]" *Id*. at 247.

In the instant case, the challenged testimony from both Casperson and Detective Jackson focused on their investigatory actions that followed the multiple complaints they received regarding defendant. Notably, the testimony was introduced to explain why Casperson and the police undertook the investigation that they did, including going undercover to deal with

defendant. Under these circumstances, the introduction of this evidence, which was not offered for the truth of the matter asserted, did not violate defendant's right to confront the witnesses against him.

## C. REQUEST FOR EVIDENTIARY HEARING

In his last claim of error, defendant argues that the trial court erred by denying his request for an evidentiary hearing. We disagree.

In his Standard 4 brief, defendant frames his argument in a manner that challenges the trial court's decision to deny his request for a *Franks*[3] hearing. We generally review for an abuse of discretion a trial court's decision in response to a defendant's motion to hold a *Franks* hearing to challenge the validity of an affidavit underlying a search warrant. *People v Martin*, 271 Mich App 280, 309; 721 NW2d 815 (2006), aff'd on other grounds 482 Mich 851 (2008). This Court reviews any factual findings "supporting the denial of the evidentiary hearing for clear error and reviews the application of those facts to the law de novo." *Id.*

In *Franks*, the United States Supreme Court considered the circumstances under which a defendant may mount a challenge to the "veracity of a sworn statement used by police to procure a search warrant." *Franks*, 438 US at 155. In pertinent part, the Court held:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. [*Id.* at 155-156.]

The Court articulated that a "presumption of validity" exists with respect to the affidavit supporting a search warrant, and that for an evidentiary hearing to be mandated, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. The Court further elaborated:

> Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when

---

[3] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing. Whether he will prevail at that hearing is, of course, another issue. [*Id*. at 171-172 (footnote omitted).]

See also *Martin*, 271 Mich App 280 at 311 (setting forth the requirements that must be met before the trial court will be required to hold an evidentiary hearing with respect to the veracity of the affidavit underlying the search warrant).

In *People v Franklin*, 500 Mich 92, 94, 113-114; 894 NW2d 561 (2017), our Supreme Court recently observed that while *Franks* is determinative with respect to when the Fourth Amendment *requires* an evidentiary hearing, it does not preclude a trial court from exercising its discretion to order an evidentiary hearing regarding the veracity of a search warrant affidavit under additional circumstances.

In his motion to suppress and requesting a *Franks* hearing, defendant focused on challenges to factual statements made by Detective Jackson in the "Investigator's Request for [a Felony] Warrant," dated March 29, 2017. Specifically, in his written submissions in the trial court, defendant focused on the veracity of the information supporting the Investigator's Request for Warrant. For instance, defendant alleged that the request for a felony warrant was based on the factual assertion that "a multitude of complainants [were] reporting to the deed fraud unit that [defendant] had sold them a house." Defendant further stated that he "challenges the truthfulness of the allegation that many people called and complained against him" and that he sought to challenge the Investigator Request's for a Felony Warrant because it contained false information. Defendant also argued that because the prosecution had not produced discovery of the alleged other complaints against him, this "potentially serves as circumstantial evidence of the deliberate falsity included in the Investigator['s] Request for Warrant." Defendant also pointed out that while Detective Jackson stated in the Investigator's Request for Warrant that defendant, Edwards and other complainants signed affidavits involving real property, during her preliminary examination testimony Detective Jackson conceded that at least one of the affidavits admitted into evidence was not signed.

While defendant styles his argument as a challenge to a search warrant affidavit, it appears that in both the trial court and on appeal, defendant is instead challenging the Investigator's Request for Warrant that led to the felony warrant for defendant's arrest. MCL 764.1a provides, in pertinent part:

(1) A magistrate shall issue a warrant upon presentation of a proper complaint alleging the commission of an offense and a finding of reasonable cause to believe that the individual accused in the complaint committed that offense. The complaint shall be sworn to before a magistrate or clerk.

(2) The finding of reasonable cause by the magistrate may be based upon 1 or more of the following:

(a) Factual allegations of the complainant contained in the complaint.

(b) The complainant's sworn testimony.

(c) The complainant's affidavit.

(d) Any supplemental sworn testimony or affidavits of other individuals presented by the complainant or required by the magistrate.

MCL 764.1d likewise provides, in pertinent part:

A complaint shall recite the substance of the accusation against the accused. The complaint may contain factual allegations establishing reasonable cause.

As our Supreme Court recognized in *People v Burrill*, 391 Mich 124, 132; 214 NW2d 823 (1974), the same "reliability and particularity requirements" for securing a search warrant also apply to the issuance of arrest warrants.

Our review of defendant's motion and the Investigator's Request for Warrant does not reveal support for defendant's claim that the document was prepared with intentionally false or misleading information or with reckless disregard for the truth. *Franks*, 438 US at 155-156. Defendant's challenge to the Investigator's Request for Warrant in the trial court focused primarily on defendant's contention that Detective Jackson and Casperson did not provide accurate and truthful information regarding the additional complaints they received against defendant. For instance, in the Investigator's Request for Warrant, Detective Jackson stated that she "was assigned to investigate multiple complaints of property related fraud received from the Office of the Register of Deeds." Defendant failed to present any supporting evidence for his allegation that this information was false. Indeed, Casperson and Detective Jackson both testified under oath at trial, consistent with the statements in the Investigator's Request for Warrant, that they had received multiple complaints accusing defendant of swindling money from individuals in Wayne County related to real property that defendant did not have a legal interest in, prompting an undercover investigation. The prosecutor also informed the trial court that these additional complaints would form the basis for a separate case against defendant. To the extent that defendant claims that the factual assertions in the Investigator's Request for Warrant regarding the signatures on the affidavits were untrue and inconsistent with Detective Jackson's testimony at the preliminary examination, we note that in the Investigator's Request for Warrant, Detective Jackson was referring to affidavits defendant provided to *other* complainants, and her statement was not limited to the affidavits that defendant provided to Detective Little and Edwards. In contrast, during her preliminary examination testimony, Detective Jackson was referring to the affidavits that defendant provided to Detective Little, who was working undercover, and Edwards. Further, defendant did not provide any additional material to the trial court in support of his motion, and has not done so on appeal, that would support a reasonable conclusion that Detective Jackson inserted untrue statements in the Investigator's Request for Warrant, or that she made statements with reckless disregard for the truth. Under the circumstances, defendant's allegation that the affidavit was tainted with

-14-

knowing and intentionally false statements, or made with reckless disregard for the truth, is simply unavailing and the trial court properly exercised its discretion by denying the motion.

## V. CONCLUSION

We affirm defendant's convictions, but remand for the ministerial purpose of correcting the clerical error in defendant's judgment of sentence consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola